THE STATE OF OHIO, APPELLEE, *v.* SHANE, APPELLANT.

[Cite as *State v. Shane* (1992), 63 Ohio St.3d 630.]

(No. 91–1601—Submitted January 14, 1992—Decided May 13, 1992.)

*Scott J. Mastin*, Assistant Prosecuting Attorney, for appellee.
*Gerald A. Latanich*, Assistant Public Defender, for appellant.

ALICE ROBIE RESNICK, J. The issue certified for our review is the proper allocation of the burden of proof when a judge gives an instruction on voluntary manslaughter in a murder prosecution. However, for the reasons which follow, we do not reach the certified issue, but affirm the judgment of the court of appeals on different grounds.

The trial judge instructed the jury on voluntary manslaughter prior to its deliberations. Because we determine that the evidence of provocation presented by Shane was insufficient, as a matter of law, to warrant an instruction on voluntary manslaughter, we find that the trial judge should have refused to give the jury an instruction on that offense. The fact that the trial judge did give the instruction was harmless error, particularly in light of

this court's determination today in *State v. Rhodes* (1992), 63 Ohio St.3d 613, 590 N.E.2d 261, that a similar jury instruction was proper.

## I

Voluntary manslaughter is an inferior degree of murder, for " 'its elements are * * * contained within the indicted offense, except for one or more additional mitigating elements * * *.' " *State v. Tyler* (1990), 50 Ohio St.3d 24, 36, 553 N.E.2d 576, 592, quoting *State v. Deem* (1988), 40 Ohio St.3d 205, 209, 533 N.E.2d 294, 298. See *Rhodes, supra,* 63 Ohio St.3d at 617, 590 N.E.2d at 263. Even though voluntary manslaughter is not a lesser included offense of murder, the test for whether a judge should give a jury an instruction on voluntary manslaughter when a defendant is charged with murder is the same test to be applied as when an instruction on a lesser included offense is sought. *Tyler, supra,* 50 Ohio St.3d at 37, 553 N.E.2d at 592.

Thus, a defendant charged with murder is entitled to an instruction on voluntary manslaughter when the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter. *Tyler, supra,* at 37, 553 N.E.2d at 592; *Deem, supra,* 40 Ohio St.3d at 211, 533 N.E.2d at 299–300; *State v. Thomas* (1988), 40 Ohio St.3d 213, 216, 533 N.E.2d 286, 289.

When the evidence presented at trial going to a lesser included offense (or inferior-degree offense) meets this test, the trial judge must instruct the jury on the lesser (or inferior-degree) offense. *State v. Loudermill* (1965), 2 Ohio St.2d 79, 31 O.O.2d 60, 206 N.E.2d 198, syllabus. On the other hand, when the evidence presented at trial does not meet this test, a charge on the lesser included (or inferior-degree) offense is not required. *State v. Kidder* (1987), 32 Ohio St.3d 279, 282–283, 513 N.E.2d 311, 315–316.

Past decisions of this court have sometimes given the erroneous impression that, whenever there is "some evidence" that a defendant in a murder prosecution may have acted in such a way as to satisfy the requirements of the voluntary manslaughter statute, an instruction on the inferior-degree offense of voluntary manslaughter must always be given. See, *e.g., State v. Muscatello* (1978), 55 Ohio St.2d 201, 9 O.O.3d 148, 378 N.E.2d 738, paragraph four of the syllabus. See, also, *Tyler, supra,* 50 Ohio St.3d at 37, 553 N.E.2d at 592. That clearly never has been the law in this state, nor is it the law today. The "some evidence" referred to in those cases is simply an abbreviated way of saying that a jury instruction must be given on a lesser included (or inferior-degree) offense when sufficient evidence is presented which would

allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior-degree) offense.

To require an instruction to be given to the jury every time "some evidence," however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense. Trial judges are frequently required to decide what lesser included (or inferior-degree) offenses must go to the jury and which must not. The jury would be unduly confused if it had to consider the option of guilty on a lesser included (or inferior-degree) offense when it could not reasonably return such a verdict.

For example, in this case, Shane also requested an instruction on involuntary manslaughter as a lesser included offense of murder, contending that he had presented sufficient evidence to warrant an involuntary manslaughter instruction. The trial judge refused to give an instruction on involuntary manslaughter, and the court of appeals correctly affirmed the trial judge's decision. Even though Shane arguably had presented some evidence of involuntary manslaughter, no jury instruction on that offense was required, because no reasonable jury could have both rejected a finding of guilty on the charged crime and returned a verdict of guilty on the lesser included offense of involuntary manslaughter.

In *State v. Huertas* (1990), 51 Ohio St.3d 22, 31–32, 553 N.E.2d 1058, 1068–1069, a defendant charged with aggravated murder had requested a jury instruction on voluntary manslaughter. This court determined that the trial judge properly denied the defendant's request, finding that the defendant had more than sufficient time to cool down between the alleged provocation and the killing. See, also, *State v. Pierce* (1980), 64 Ohio St.2d 281, 18 O.O.3d 466, 414 N.E.2d 1038.

In *State v. Deem, supra,* the defendant being prosecuted for felonious assault requested a jury instruction on the inferior-degree offense of aggravated assault. The trial judge refused to give the proposed instruction. This court found that, as a matter of law, the defendant did not present *sufficient* evidence of provocation to be entitled to a jury instruction on aggravated assault. *Id.,* 40 Ohio St.3d at 211, 533 N.E.2d at 300.

Whether the mitigating circumstances of provocation are shown in this case, and therefore whether the evidence presented would reasonably support a conviction for voluntary manslaughter, depend on whether the terms of the voluntary manslaughter statute are met.

Ohio's voluntary manslaughter statute, R.C. 2903.03, reads:

"(A) No person, while under the influence of sudden passion or in a sudden fit of rage, *either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force,* shall knowingly cause the death of another.

"(B) Whoever violates this section is guilty of voluntary manslaughter, an aggravated felony of the first degree." (Emphasis added.)

The statute makes clear that the sudden passion or sudden fit of rage must be "brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force * * *." The question which must be answered in each case is: How much provocation is "reasonably sufficient" provocation?

An inquiry into the mitigating circumstances of provocation must be broken down into both objective and subjective components.[1] In determining whether the provocation is reasonably sufficient to bring on sudden passion or a sudden fit of rage, an objective standard must be applied. Then, if that standard is met, the inquiry shifts to the subjective component of whether this actor, in this particular case, actually was under the influence of sudden passion or in a sudden fit of rage. It is only at that point that the " * * * emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time * * * " must be considered. *Deem, supra,* paragraph five of the syllabus. If insufficient evidence of provocation is presented, so that no reasonable jury would decide that an actor was reasonably provoked by the victim, the trial judge must, as a matter of law, refuse to give a voluntary manslaughter instruction. In that event, the objective portion of the consideration is not met, and no subsequent inquiry into the subjective portion, when the defendant's own situation would be at issue, should be conducted.[2]

---

1. "There are four obstacles for the defendant to overcome before he can have his intentional killing reduced from murder to voluntary manslaughter: (1) There must have been a reasonable provocation. (2) The defendant must have been in fact provoked. (3) A reasonable man so provoked would not have cooled off in the interval of time between the provocation and the delivery of the fatal blow. And (4), the defendant must not in fact have cooled off during that interval." 2 LaFave & Scott, Substantive Criminal Law (1986) 255, Section 7.10.

    Factors (1) and (3) are objective; factors (2) and (4) are subjective. For purposes of this discussion, we assume that factors (3) and (4) are present. We also accept factor (2) as true, in part because we must consider the evidence in the light most favorable to the defendant. Therefore, we focus our inquiry on factor (1).

2. The Supreme Court of Michigan, in considering the role of judge and jury in this situation, has stated:

    "The determination of what is reasonable provocation is a question of fact for the factfinder. * * * However, the judge does play a substantial role. The judge furnishes the standard of

The provocation must be *reasonably sufficient* to incite the defendant to use deadly force. For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control. Once the defendant has been sufficiently provoked by the victim, it may be proper to label the conduct from that point onward "understandable." See 2 LaFave & Scott, Substantive Criminal Law (1986) 256, Section 7.10. Our criminal law recognizes that the provoked defendant is less worthy of blame than the unprovoked defendant, but the law is unwilling to allow the provoked defendant to totally escape punishment.[3] The jury, because it has the ability to find the sufficiently provoked defendant guilty of voluntary manslaughter, rather than murder, is able to exercise the value judgment provided by the law in these circumstances.

There are certain types of situations that have been regarded as particularly appropriate cases in which voluntary manslaughter instructions are often given when murder charges are brought. For example, assault and battery, mutual combat, illegal arrest and discovering a spouse in the act of adultery are some of the classic voluntary manslaughter situations. Because the present case involves none of those situations, we make no comment on the appropriateness of a voluntary manslaughter instruction in a murder prosecution involving one of those categories of cases. The case before us involves a defendant who allegedly was provoked to act under the influence of sudden passion or in a sudden fit of rage by his fiancee's words informing him of her sexual infidelity. Therefore, we consider only whether the provocation alleged in such a situation is reasonably sufficient so that a voluntary manslaughter instruction should have been given.

Many courts have adopted a rule that "mere words" can not be sufficient provocation to reduce a murder charge to voluntary manslaughter, no matter how insulting or inciteful. See, *e.g., Nicholson v. United States* (D.C.App. 1977), 368 A.2d 561; *People v. Chevalier* (1989), 131 Ill.2d 66, 136 Ill.Dec. 167, 544 N.E.2d 942; *Perigo v. State* (Ind.1989), 541 N.E.2d 936; *State v. Guebara* (1985), 236 Kan. 791, 696 P.2d 381; *Girouard v. State* (1991), 321 Md. 532, 583 A.2d 718; *State v. Hilliker* (Me.1974), 327 A.2d 860; *State v. Lujan* (1980), 94

---

what constitutes adequate provocation, i.e., that provocation which would cause a reasonable person to act out of passion rather than reason." (Citations omitted.) *People v. Pouncey* (1991), 437 Mich. 382, 390, 471 N.W.2d 346, 350. When, as a matter of law, no reasonable jury could find that the provocation was adequate, the judge may refuse to give a voluntary manslaughter instruction.

3. The act of killing while under the influence of sudden passion or in a sudden fit of rage is not so easily excused as is, for example, a killing in self-defense, for which a defendant is allowed to escape punishment.

N.M. 232, 608 P.2d 1114; *State v. Watson* (1975), 287 N.C. 147, 214 S.E.2d 85. See, also, Annotation, Insulting Words as Provocation of Homicide or as Reducing the Degree Thereof (1965 and 1991 Supp.), 2 A.L.R.3d 1292. This general rule usually applies even if the spoken words have the effect of informing the defendant of some provocative event that has taken place. But, see, *e.g., Commonwealth v. Berry* (1975), 461 Pa. 233, 336 A.2d 262 (manslaughter instruction approved when defendant killed victim after defendant was told by his mother that victim had assaulted her). It appears, however, that courts are generally more inclined to give a manslaughter instruction when the alleged provocation is a victim-spouse's confession of adultery. See, *e.g., Commonwealth v. Schnopps* (1981), 383 Mass. 178, 417 N.E.2d 1213; *Raines v. State* (1981), 247 Ga. 504, 277 S.E.2d 47. See, also, Annotation, Spouse's Confession of Adultery as Affecting Degree of Homicide Involved in Killing Spouse or His or Her Paramour (1979 and 1991 Supp.), 93 A.L.R.3d 925. The typical scenario is a wife's confession of adultery which allegedly so provokes a husband that he kills her in a sudden fit of rage. Some courts have limited this infidelity exception to the acts between spouses, but have not applied it when the parties are romantically involved but are not married, even when the relationship is similar to a marriage. See, generally, *People v. McCarthy* (1989), 132 Ill.2d 331, 138 Ill.Dec. 292, 547 N.E.2d 459. This adultery exception has been totally rejected by some courts, unless the situation is where the spouse discovers the other spouse in the act of adultery itself, or immediately thereafter. See, *e.g., People v. Chevalier, supra.* Finally, a few courts have not followed a "mere words" rule, but, instead, have approved a manslaughter jury instruction when words alone were the only provocation alleged, and no relationship existed between victim and assailant. See, *e.g., State v. Harwood* (1974), 110 Ariz. 375, 519 P.2d 177; *State v. Boyd* (1975), 216 Kan. 373, 532 P.2d 1064.

While the "mere words" rule is attractive—it has the advantage of offering a bright line test which eliminates an entire class of cases—the rule has been criticized as imposing an "unnecessary limitation on the use of voluntary manslaughter as a mitigating defense." Romero, Sufficiency of Provocation for Voluntary Manslaughter in New Mexico: Problems in Theory and Practice (1982), 12 New Mex.L.Rev. 747, 776. It is argued that such a rule ignores the fact that sometimes words may be even more inflammatory than aggressive actions, and that the rule keeps from the jury some situations that should qualify for a manslaughter instruction. Nevertheless, we do not believe that words alone are generally as inflammatory as aggressive actions. Further, it is only when a jury could reasonably find that the defendant was incited by sufficient provocation brought on by the victim that an instruction on voluntary manslaughter should be given in a murder prosecution.

We disapprove of a rule which does not allow "mere words" to be sufficient provocation to reduce murder to manslaughter generally, but which makes a specific exception where the provocation consists of mere words by one spouse informing the other spouse of infidelity. This exception to the general rule has its foundation in the ancient common-law concept that the wife is the property of the husband. See *Regina v. Mawgridge* (1707), Kelyng, J. 119, 137, 84 Eng.Rep. 1107, 1115: "[W]hen a man is taken in adultery with another man's wife, if the husband shall stab the adulterer, or knock out his brains, that is bare manslaughter: for jealousy is the rage of a man, and adultery is the highest invasion of property * * *." (Citations omitted.) This archaic rule has no place in modern society. Words informing another of infidelity should not be given special treatment by courts trying to determine what provocation is reasonably sufficient provocation. The killing of a spouse (usually a wife) by a spouse (usually a husband) who has just been made aware of the victim spouse's adultery simply is not an acceptable response to the confession of infidelity. See Comment, Provoked Reason in Men and Women: Heat-of-Passion Manslaughter and Imperfect Self–Defense (1986), 33 U.C.L.A. L.Rev. 1679, 1696–1697.

We hold that words alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations. Rather, in each case, the trial judge must determine whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant a voluntary manslaughter instruction. The trial judge is required to decide this issue as a matter of law, in view of the specific facts of the individual case. The trial judge should evaluate the evidence in the light most favorable to the defendant, without weighing the persuasiveness of the evidence. *State v. Wilkins* (1980), 64 Ohio St.2d 382, 388, 18 O.O.3d 528, 532, 415 N.E.2d 303, 308.

## II

Bearing in mind that to be reasonably sufficient provocation the provocation must be *occasioned by the victim*, we will now proceed to consider the facts of this case in light of the foregoing principles. We find that Tina Wagner did very little to provoke Shane into a sudden fit of rage. It was Shane who woke her up when he returned to the apartment that night. When they went into the bedroom, he repeatedly asked her questions in an attempt to get her to confess her infidelity to him. When Wagner initially denied that she had been involved with other men, Shane called her a liar. When Wagner finally did admit her infidelity, Shane then lost control. From the evidence presented it

would appear that the anger built up in Shane's own mind, and he manufactured much of it himself by provoking Wagner to give the responses she did.

Provocation, to be reasonably sufficient, must be *serious*. But it was only Wagner's statements to Shane that caused him to become enraged. It was revealed at trial that Wagner's urine alcohol content was 0.27 grams per deciliter. Several witnesses, including Shane himself, testified at trial that Wagner was intoxicated.

An expert testified at trial that the strangulation of Wagner took from between one to five minutes to complete. Because we must view the evidence favorably to Shane, we do not take into account the testimony of another expert that a minimum of four or five minutes probably elapsed from the time Shane started to strangle Wagner until she was actually dead. A strangulation is not like a gunshot, which happens fast and could be immediately regretted. Rather, the passion or rage had to be sustained for at least one minute before the act was completed.

A psychologist who testified at trial offered his opinions about Shane's personal propensity to be provoked in the situation as it developed. However, even assuming that Shane subjectively could be easily provoked by Wagner to act under the influence of sudden passion or in a sudden fit of rage, there still must be sufficient provocation by the victim so that a reasonable person would be so provoked. Accepting as fact that Shane was actually provoked only satisfies one part of the provocation inquiry. Because we find that the provocation by the victim in this case was not reasonably sufficient provocation, we hold that the objective portion of the inquiry has not been satisfied. Thus, a reasonable person would not have been provoked in the circumstances of this case.

Hence, we find that the totality of the evidence in this case, even when viewed in a light most favorable to the defendant, did not raise a possibility of serious provocation. Shane alleges that it was only mere words that provoked him. Considering this fact, together with the surrounding circumstances of the case, we conclude that no reasonable jury could have decided that Shane was sufficiently provoked by the victim so that a conviction on the inferior-degree offense of voluntary manslaughter could have been forthcoming.

## CONCLUSION

When reasonably sufficient evidence of provocation has not been presented, no jury instruction on voluntary manslaughter should be given. In this case, the provocation that allegedly caused Shane to act under the influence of sudden passion or in a sudden fit of rage was not reasonably sufficient, as a matter of law, to incite him to use deadly force. We find that no reasonable

jury could have found Shane not guilty of murder, but guilty of voluntary manslaughter. Accordingly, the judgment of the court of appeals upholding defendant's murder conviction is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.