OPINION
Defendant Mark Mack appeals a judgment of the Court of Common Pleas of Richland County, Ohio, convicting and sentencing him for one count of aggravated murder with a firearms specification, after a jury found him guilty. Appellant assigns two errors to the trial court:
ASSIGNMENTS OF ERROR
 ASSIGNMENT OF ERROR #1:
 THE TRIAL COURT IN GRANTING THE STATE'S MOTION IN LIMINAE [SIC] AND THUS BARRING THE DEFENSE FROM PRESENTING EVIDENCE SUPPORTING ITS THEORY OF VOLUNTARY MANSLAUGHTER, DENIED DEFENDANT HIS RIGHT TO A FAIR TRIAL AS GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTIONS.
 ASSIGNMENT OF ERROR #2:
 THE TRIAL COURT IN GRANTING THE STATE'S MOTION IN LIMINAE [SIC] PREVENTED THE DEFENSE FROM PRESENTING EVIDENCE RELEVANT TO THE ISSUE OF WHETHER DEFENDANT ACTED WITH PRIOR CALCULATION AND DESIGN, DENYING DEFENDANT HIS RIGHT TO A FAIR TRIAL AS GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTIONS.
At trial, the State alleged appellant shot decedent Christopher Jenkins five times, killing him. In his opening statement, defense counsel conceded appellant had shot decedent, but contended he was acting under a sudden fit of rage or passion, because of a long standing feud between appellant and decedent.
On the night in question, appellant attended a party. A disagreement developed between appellant, Eric Miller and Johnny Gibbs. Appellant went to a room in the Holiday Inn with several other people. Gibbs and Miller left the Holiday Inn, and reported to the police there was a pound of marijuana in the room where appellant and his friends now were. Police officers searched the room, and found no drugs, but instructed everyone to leave the Holiday Inn. Meanwhile, Gibbs and Miller went to appellant's friend's home, and stole various items, including appellant's sixty compact disks. When appellant returned and discovered the theft, he was convinced decedent was the perpetrator, whereas his friend gave police the names of Gibbs and Miller. Appellant encountered decedent, and shot him five times.
At trial, defense counsel in his opening statement detailed the past history of appellant and the victim, and suggested to the jury the defense of voluntary manslaughter. On the third day of trial, the prosecution filed a document styled "motion in limine" which moved the court to exclude any and all evidence offered by the defense directed at establishing by what it refers to as "collateral means" the bad blood between appellant and the victim. The motion asserts the evidence and exhibits, including complaints filed with the police are hearsay. The State alleged appellant may take a strategic advantage if the court permitted him to introduce assertions against the deceased from other sources, without the accused taking the stand and subjecting himself to cross examination. The State further urged the evidence was not relevant because of the remoteness in time between those events and the crime. The court sustained the motion, and advised appellant it would not permit the evidence unless it was timely and sufficiently serious, because of the likelihood the jury would be misled.
 I
In his first assignment of error, appellant urges the court denied his right to a fair trial when it granted the motion inlimine, which effectively prevented him from presenting evidence supporting his defense of voluntary manslaughter.
In State v. Rhodes (1992), 63 Ohio St.3d 613, the Ohio Supreme Court held:
 A defendant on trial for murder or aggravated murder bears the burden of persuading the fact finder, by a preponderance of the evidence, that he or she acted under the influence of said passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim reasonably sufficient to incite the defendant into using deadly force, R.C. 2903.03(A), in order for the defendant to be convicted of voluntary manslaughter rather than murder or aggravated murder.
 Syllabus by the court, citation deleted.
Generally, a motion in limine is directed to the sound discretion of the trial judge, and is a request that the court prevent the injection of prejudicial, irrelevant, or inadmissible matters into the trial, Mason v. Swartz (1991), 76 Ohio App.3d 43, citing State v. Grubb (1986), 28 Ohio St.3d 199. A motion inlimine is a tentative, interlocutory, precautionary ruling in anticipation of rulings on evidentiary issues at trial, Collins v.Storer Communications, Inc. (1989), 65 Ohio App.3d 443. A party must seek to introduce the evidence at trial or proffer the evidence into the record, so the trial court may make a final ruling. If the party does not do so, the admissibility issue initiated in the motion in limine is not preserved for appeal.
Although appellant's assignments of error are both directed to the ruling on the motion in limine, we will analyze appellant's argument as evidentiary rulings.
To warrant a voluntary manslaughter instruction, the defendant must produce evidence a sudden passion or fit of rage was brought on by serious provocation, occasioned by the victim, reasonably sufficient to incite the defendant into using deadly force, see State v. Shane (1992), 63 Ohio St.3d 630. Shane also provides the interval between the provocation and the fatal blow must be so close in time that the defendant had no time to "cool off." The State argues here, the incidents appellant sought to present to the jury were too far removed in time from the shooting so as to be inadmissible on the issue of provocation, as a matter of law.
We find the State misunderstands the nature of the evidence. Appellant did not seek to present this evidence as proof of severe provocation, but rather as evidence tending to show the reasonableness of his suspicion that Jenkins was the burglar. The past history of the parties will not be evidence of the actual incident alleged to be the provocation, but may be admissible to show the reasonableness of the defendant's reaction to the "final straw that broke the camel's back" incident. In other words, the defendant must show a recent serious incident of sufficient provocation to incite to deadly force. But he can also present evidence of other incidents, of themselves too far remote from the crime, to show why his reaction to the most recent provocation was reasonable.
However, the defendant's evidence must be offered in accord with the rules of evidence in order to be admissible.
Appellant was able to elicit the testimony of a police officer, who testified appellant appeared to believe the theft had been perpetrated by the victim rather than the two persons from the party. In fact, one of the police officers testified he specifically did not arrest appellant for under age drinking, because, in light of the police raid at the party, coupled with the burglary, appellant had had a very bad night and the officer did not wish to make it worse.
Appellant proffered evidence the parties had been friends from March of 1997, some six months prior to the shooting, when the victim accused appellant of theft. Approximately three weeks before the shooting, appellant and the victim engaged in another altercation, over which criminal charges were pending against appellant. One week before the shooting, the victim brandished a bottle at appellant, but thereafter, the parties entered into a truce. Throughout the six months before the shooting, the victim repeatedly threatened, assaulted, and stalked appellant, and may even have shot up appellant's home. Appellant attempted to elicit this information from three police officers, an assistant city law director, and several other persons. Appellant chose not to take the stand in his own defense. Appellant argues had he been permitted to present all this evidence to the jury, the jury would have concluded appellant had a reasonable belief the victim had broken the truce between the parties and begun to escalate their problems once again. Appellant attempted to elicit some of this information on cross examination of various state witnesses.
We agree with the trial court the evidence appellant attempted to elicit was hearsay, insofar at least that the witnesses were not competent to testify to matters other than what they had actually witnessed. As the court pointed out, this is different from appellant questioning the witnesses regarding what the appellant had told them. For example, appellant wanted to elicit testimony regarding what appellant had reported decedent had done. Further, we find appellant was actually able to present some of this evidence to the jury, although not as extensively as he wished.
A trial court should be careful not to unreasonably restrict a criminal defendant's ability to present his defense, but the defense must nevertheless comply with Rules of Evidence and of Criminal Procedure. We find the trial court did not err in restricting the evidence presented.
The first assignment of error is overruled.
 II
In his second assignment of error, appellant urges the court's actions in sustaining the motion in limine prevented appellant from presenting evidence he did not act with prior calculation and design. Again, appellant urges he should have been permitted to place his actions in context to the events of the previous weeks and months, in order to convince the jury appellant was in a rage brought on by his perception of the victim's alleged treachery, present and past.
We have reviewed the record, and find the State presented evidence appellant became angry over the events of the night, secured a firearm, and actively looked for both the victim and another man. Appellant repeated to several persons that someone was going to get shot, and in fact, had made threatening remarks prior to the events of the party and at the burglary scene.
We have already found in I, supra, the court's ruling on the purposed evidence was appropriate. Furthermore, the State presented sufficient, competent and credible evidence from which the jury could conclude appellant, in getting a gun and gloves, and seeking out the victim, acted with prior calculation and design, rather than while in the throes of extreme provocation and blind rage.
The second assignment of error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed, and the cause is remanded to that court for execution of sentence.
By Gwin, P.J., Farmer, J., and Wise, J., concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed and the cause is remanded to that court for execution of sentence. Costs to appellant.