[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Appellant, Shelley Davis, appeals from her conviction in the Montgomery County Common Pleas Court of Involuntary Manslaughter with a firearm specification. The appellant was engaged in a lesbian relationship with Deborah Jones who was separated from her husband, David Jones.
In September of 1995, the appellant and Deborah Jones purchased a home together at 633 Ellsworth Avenue in Trotwood. While living there appellant received threats from David Jones on her voice mail and she began taking security measures including purchasing ammunition for and loading two guns Deborah Jones had in their house.
Jones told the appellant that she intended to go back to her husband David and on February 7, 1996, Deborah and David Jones went to 633 Ellsworth to remove some clothing. While there the appellant arrived but went to another room and began playing with her tape recorder. Eventually the appellant and David Jones had words and while David Jones was out of the room briefly, appellant obtained the .380 pistol she had hidden in the room and held it behind her back. Appellant testified the victim stated "I should have fucked you up a long time ago" and then came toward her. Appellant shot Jones in his arm from a distance of about two feet. David ran through the house telling Deborah he had been shot. He got outside but died in the yard by the street. The bullet had apparently trailed into his chest from his arm. Appellant made no attempt to follow him and remained in the house talking to Deborah and then to her mother by telephone. Appellant was unaware of David Jones' condition after she shot him. Appellant stated that she shot Jones so that he would stay away from her.
Appellant's first assignment of error is as follows:
 THE TRIAL COURT ERRED IN INSTRUCTING THE JURY IT COULD FIND HER GUILTY OF THE LESSER INCLUDED OFFENSE OF INVOLUNTARY MANSLAUGHTER.
Appellant argues that an instruction on the lesser included offense of involuntary manslaughter should not have been given in the instant case since the underlying felony she was alleged to have committed, felonious assault, required proof of an element not necessary for the greater charge of murder i.e. proof of the use of a deadly weapon. She also argues the trial court erred in giving the involuntary manslaughter instruction because the evidence presented at trial would not justify an instruction on involuntary manslaughter.
This court will not consider the appellant's claim that felonious assault as defined in R.C. 2903.11(A)(2) can never be a lesser included offense of murder, as that argument was not advanced in the trial court by the appellant. See, State v.Williams (1977), 51 Ohio St.2d 112. Crim.R. 30 provides that on appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objections.
A jury instruction must be given on a lesser included offense when sufficient evidence is presented which would allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included offense. State v. Shane (1992),63 Ohio St.3d 630,633.
The appellant argues that the evidence in this case clearly demonstrates that she purposely killed David Jones in self-defense and thus a jury could not reasonably conclude from the evidence that she committed the lesser included offense of involuntary manslaughter.
We disagree. Shelley Davis testified in the trial and never stated that it was her intention or purpose to kill David Jones. She testified at pages 1509-1512 of the record.:
 A. He was still pacing back and forth on the foyer and, you know, still complaining, and he stopped. He said, I should have fucked you up a long time ago, and while he was talking to me, he was pulling on his gloves the whole time before he left the room. I should have fucked you up a long time ago, and he started coming towards me. He got about two feet from me, and I reached behind me and I fired.
Q. With your right hand?
A. With my right hand.
 Q. And after you fired, first of all, do you know whether the bullet struck him?
A. It hit him in his arm.
Q. Did you see him react to that?
A. He ran.
Q. Where did he go?
A. He ran into the family room.
Q. And to what area of the family room if you know?
A. Next to the coffee table.
Q. And how do you know that?
 A. Because I stood up after he ran. I stood up and I looked through, there's a mirror or mirrored closet. I looked through the mirrored closet. I could see him standing in the middle of the room holding his arm.
Q. Where was Debbie?
A. She was in the bedroom.
Q. She was not in the family room?
A. No, she wasn't.
Q. There is no doubt in your mind?
A. There is no doubt in my mind.
 Q. You saw him through the reflection of the mirror, and what did you do next?
 A. He said, oh, Debbie, she shot me, and he tried to get the patio door open, but he didn't get it open, and he turned around and ran back towards me. When he started coming back towards me, I was right here. The mirror was right there and family room was right there. I moved back and sat back down next to the gun, which was till on the ottoman, and he looked at me the whole time he was on his way out of the door, and he walked, ran back past out of the house. He never said anything else.
Q. He went out the front door?
A. Out the front door.
 Q. Was the gun still positioned on the ottoman next to you when he came back through and saw he was coming toward the front door area?
A. Yes.
 Q. Do you know whether the weapon still had more bullets in it?
A. Yes.
 Q. And do you know how many bullets were left in the gun?
A. Three.
Q. Did you know that when you fired the first shot?
A. I knew, yes.
Q. How many did you think were there in total?
A. Four, because there had been five in the gun.
 Q. And did you make any effort to fire the weapon at him again as he came back past you holding his arm?
A. No.
Q. Did you say anything to him?
A. No.
Q. Did he see anything to you?
A. No.
The jury could have reasonably inferred from the evidence that the defendant did not have a purpose to kill David Jones from the evidence that the victim was shot in the arm and only one shot was fired by the defendant although she knew three more bullets were in the gun she wielded. Also Detective Culbertson testified that the defendant told him she fired the gun "to get him away from her." (Tr. 829).
The jury could have fairly found from the evidence that the defendant knowingly caused physical harm to David Jones by use of a deadly weapon. The appellant's first assignment of error is overruled.
In her second assignment of error, appellant argues that the trial court erred in denying her motion for a new trial and post-verdict Crim.R. 29 motion because the court's instruction on involuntary manslaughter was erroneous. For the same reasons, as stated in our resolution of the first assignment of error, this assignment is overruled.
Judgment of the trial court is Affirmed.
GRADY, P.J., and YOUNG, J., concur.
Copies mailed to:
George A. Katchmer
Arvin S. Miller
Hon. Patrick Foley