This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant-defendant Frederick Nelson has appealed from the judgment of the Summit County Court of Common Pleas finding him guilty of aggravated murder with a firearm specification. This Court affirms.
 I.
On August 5, 2000, Nelson was indicted by the Summit County Grand Jury on one count of aggravated murder, in violation of R.C. 2903.01(A), with a firearm specification, in violation of R.C. 2941.145. On October 13, 2000, Nelson was indicted on one count of improperly discharging a firearm, in violation of R.C. 2923.161. The latter charge was dismissed before trial.
The matter proceeded to trial on October 30, 2000. The jury found Nelson guilty of aggravated murder with a firearm specification.
Nelson has appealed, asserting one assignment of error.
 II. ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN FAILING TO GIVE THE INSTRUCTION ON VOLUNTARY MANSLAUGHTER AS A LESSER AND INCLUDED OFFENSE FOR THE JURY'S CONSIDERATION.
 In his sole assignment of error, Nelson claims that the trial court committed prejudicial error when it failed to instruct the jury on a charge of voluntary manslaughter. This Court disagrees.
"Before giving a jury instruction on voluntary manslaughter in a murder case, the trial judge must determine whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction." State v. Shane (1992), 63 Ohio St.3d 630, paragraph one of the syllabus. Ohio's voluntary manslaughter statute, R.C. 2903.03, provides:
 (A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another[.]
 "In determining whether the provocation is reasonably sufficient to bring on sudden passion or a sudden fit of rage, an objective standard must be applied." Shane, supra, at 634.
Nelson timely requested an instruction on voluntary manslaughter. Nelson claims that he had proved "reasonably sufficient provocation," necessitating a voluntary manslaughter instruction because his wife confessed her adultery with the defendant, and because the decedent allegedly bragged to Nelson about their adulterous trysts. These claims are without merit.
It is axiomatic that "[w]ords alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations." Shane, supra, at paragraph two of the syllabus. While it is conceivable as a matter of law that some combination of words alone could produce "reasonably sufficient provocation," spousal confessions of adultery are not among them:
 We disapprove of a rule which does not allow "mere words" to be sufficient provocation to reduce murder to manslaughter generally, but which makes a specific exception where the provocation consists of mere words by one spouse informing the other spouse of infidelity. This exception to the general rule has its foundation in the ancient common-law concept that the wife is the property of the husband. See Regina v. Mawgridge (1707), Kelyng, J. 119, 137, 84 Eng.Rep. 1107, 1115; "When a man is taken in adultery with another man's wife, if the husband shall stab the adulterer, or knock out his brains, that is bare manslaughter: for jealousy is the rage of a man, and adultery is the highest invasion of property * * *." (Citations omitted.) This archaic rule has no place in modern society. Words informing another of infidelity should not be given special treatment by courts trying to determine what provocation is reasonably sufficient provocation. The killing of a spouse (usually a wife) by a spouse (usually a husband) who has been made aware of the victim spouse's adultery simply is not an acceptable response to the confession of infidelity. See Comment, Provoked Reason in Men and Women: Heat-of-Passion Manslaughter and Imperfect Self-Defense (1986), 33 U.C.L.A. L.Rev. 1679, 1696-1697.
 Shane, supra, at 637.
In the instant case, Nelson's wife, Christine Nelson, disclosed to Nelson that she was having an affair with the decedent Mark Burton. Burton was a cook who worked at the same restaurant as Christine. While never disclosing it before trial, Nelson testified the day before he killed Burton that Burton bragged to Nelson that he had sexual intercourse with Christine "and you won't forget it and neither will she." Nelson's murderous plan was executed the next day. The night of August 6, 2000, Nelson went to Burton's workplace, shot and killed him with a shotgun, and scalped him with a knife before he fled the scene.
Under the first prong of the Shane test, timing is immaterial. The central question is whether the upsetting event presented a "reasonably sufficient provocation," to cause the death of another. See Shane,supra, at 634.
Pursuant to the clear command of the Ohio Supreme Court, this Court concludes that Christine's disclosure and Burton's alleged remarks, even if both are taken to be true, are insufficient as a matter of law to necessitate an instruction for voluntary manslaughter. See Shane,supra, at 637. The disclosure of adultery alone by a disaffected spouse does not operate to partially excuse the killing of her paramour.
Having failed to demonstrate that he had a "reasonably sufficient provocation," to kill Burton, this Court's analysis is at an end:
 If insufficient evidence of provocation is presented, so that no reasonable jury would decide that an actor was reasonably provoked by the victim, the trial judge must, as a matter of law, refuse to give a voluntary manslaughter instruction. In that event, the objective portion of the consideration is not met, and no subsequent inquiry into the subjective portion, when the defendant's own situation would be at issue, should be conducted.
 Shane, supra, at 634. This means arguments that Nelson had an opportunity to cool down from the time he learned of Christine's adultery to the time he killed Burton need not be considered, though such evidence is manifest in the record. See State v. Huertas (1990), 51 Ohio St.3d 22, 31-32.
This Court holds that the trial court properly denied Nelson's request for an instruction on voluntary manslaughter. Accordingly, Nelson's sole assignment of error is overruled.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
 ______________________________________ DONNA J. CARR
BATCHELDER, P.J., SLABY, J. CONCUR.