DECISION AND JUDGMENT ENTRY
This case comes to us from the Huron County Court of Common Pleas. It is an appeal from a judgment of conviction and sentence on two counts of aggravated murder and one count of carrying a concealed weapon. Because we conclude that the trial court did not abuse its discretion in its evidentiary rulings and properly refused to instruct the jury on certain lesser included offenses, we affirm.
During the first week of June 1998, Sherry Gurley moved from the home she shared with her husband, appellant, Barron "Butch" Gurley. The couple had been married for sixteen years. Sherry Gurley, along with her oldest daughter, fifteen-year-old Tiffany, moved into a duplex in Bellevue, Ohio.
After Sherry Gurley moved, appellant became upset and began to exhibit signs of severe anger and jealousy. Appellant came to believe, without apparent basis, that Sherry Gurley was seeing other men. During the weeks following Sherry Gurley's exit, appellant expressed to numerous acquaintances his opinion that it was wrong for a wife — even an estranged wife — to see other men. Appellant told numerous people that if he ever found Sherry with another man he would kill both of them.
Appellant also expressed anger at his former sister-in-law, Amy Cloum. Cloum and Sherry Gurley were close friends, despite Cloum's divorce from Sherry's brother. After Sherry's move to Bellevue, the two were frequent social companions. Appellant expressed his belief that Cloum was, in part, responsible for Sherry leaving him and Cloum helped conceal Sherry's liaisons with other men. Appellant told friends, "If there was one fuckin' bitch that he could kill, it would be her."
In mid-August 1998, appellant told a friend that his wife had left him and, "* * * that it was just too much for him to take, and that he was going to kill her." To prove his sincerity appellant offered to show the friend the gun he kept in his pickup truck for this purpose. The friend declined to view the weapon, but a few days later a car wash attendant said he found a handgun under the driver's seat of appellant's pickup truck.
On August 29, 1998, Sherry Gurley had a birthday party for her daughter at the duplex. Amy Cloum was there, as was appellant. At the party, Sherry Gurley and appellant argued. Tiffany Gurley later testified that she heard her father tell her mother, "* * * it's all going to be over tomorrow."
After the party, Amy Cloum and Sherry Gurley left together.[1]
Appellant set out to find them. Sherry Gurley's neighbors reported that appellant drove past her house numerous times that night. The boyfriend of appellant's oldest daughter by another marriage, Bo Gaydish, testified that appellant picked him up and the two continued the search. Gaydish later testified that appellant made three or four passes past Sherry Gurley's house while Gaydish was with him. They also visited Amy Cloum's ex-husband's house and bars as far away as Sandusky, Ohio. According to Gaydish, during this ride appellant told him that he believed Sherry Gurley was with another man and if she was, "* * * he would kill `em both." Appellant then pulled out a handgun, cocked it and rested it in his lap.
Gaydish rode with appellant for several hours, well into the early morning hours of August 30. Appellant dropped Gaydish off at approximately 3:30 a.m. Gaydish testified that he asked appellant to give him the gun, "* * * so he didn't do anything stupid." According to Gaydish, appellant responded, "* * * that he liked me, to mind my own business; from what he did from there on out was, his business only."
At approximately 4:15 a.m., Sherry Gurley and Amy Cloum returned home. Appellant was waiting for them. When the women pulled into their driveway, appellant drove up quickly, stopping his truck across the entrance to the driveway. Several witnesses heard the truck screech to a stop followed by the slam of a door. Witnesses heard appellant scream, "you fucking whore" three times followed by two gunshots.
A few moments later, appellant appeared at the Bellevue Police Station, telling police he had shot his wife. Police took appellant into custody and investigated his statements by going to Sherry Gurley's home. There, they found both women dead.
Meanwhile, appellant told police that he had been looking for the women all night. During a subsequent police interview, appellant stated that when his wife failed to come home within a short time after the bar's 2:30 a.m. closing time, he became certain she was with another man. By the time the women did appear, he was in a self-described state of "rage." Even so, he denied that when he approached the women's car with a loaded revolver that he intended to use it. Rather, according to appellant, he meant to frighten the two. Appellant blamed the shooting on Amy Cloum, who "* * * hit me and I went off."
Appellant was indicted on two counts of aggravated murder, both with a firearm specification but without capital specifications. He was also charged with carrying a concealed weapon. The matter was tried to a jury which convicted appellant on all counts and specifications. The trial court sentenced appellant to consecutive life terms of imprisonment for the murders and a concurrent seventeen months for carrying a concealed weapon. From this verdict and sentence, appellant now brings this appeal, setting forth the following two assignments of error:
 "1. The Trial Court erred to the prejudice of Defendant-Appellant in limiting the latitude of the defense in presenting or developing evidence which was probative of the elements of the offense.
 "2. The Trial Court erred to the prejudice of Defendant-Appellant in refusing to instruct the jury on lesser included offenses of voluntary manslaughter and involuntary manslaughter on both offenses of conviction."
 I.
In his first assignment of error, appellant claims prejudice from two evidentiary rulings made during the trial. The trial court refused to allow introduction of evidence that Amy Cloum's blood/alcohol content was .14 percent, .04 percent above the legal limit for operating a motor vehicle, and that the autopsy revealed traces of marijuana residue in Sherry Gurley's blood. The court ruled that, if this evidence was at all relevant, its probative value was outweighed by the danger of prejudice. The second ruling of which appellant complains was the exclusion of testimony of a psychologist who, according to the defense proffer, would have testified that appellant's mental state at the time of the shooting rendered him, "* * * extremely vulnerable to * * * otherwise insignificant events."
The defense theory for the relevance of both of these pieces of evidence was that Amy Cloum was so drunk that she lashed out at appellant when he came to her car and that appellant's unusually sensitive condition caused him to fire his revolver. This provocation, the defense theorized, might negate the element of prior calculation necessary to prove aggravated murder in violation of R.C. 2903.01(A).
Decisions concerning the admission of evidence at trial rest in the sound discretion of the court and will not be reversed absent an abuse of that discretion. State v. Long (1978), 53 Ohio St.2d 91, 99. An abuse of discretion is more than an error of law or judgment, the term connotes that the court's attitude is arbitrary, unreasonable or unconscionable.Id. at 98.
Appellant did not enter an insanity plea and Ohio has no diminished capacity defense. State v. Wilcox (1982), 70 Ohio St.2d 182, paragraph one of the syllabus. A defendant is ordinarily precluded from offering expert psychiatric or psychological testimony to show that he or she lacked the capacity to form a specific mental state which is an element of a crime outside of an insanity defense. Id at paragraph two of the syllabus; see, also, State v. Shane (1992), 63 Ohio St.3d 630, 635
(provocation a defense only if sufficient to affect an ordinary person).
In this case, appellant sought to introduce psychological testimony to demonstrate an ultra-sensitivity to provocation for the purpose of countering evidence of prior calculation. The trial court properly excluded such testimony.
With respect to the marijuana residue found in the autopsy of Sherry Gurley, like the trial court, we cannot see that this evidence has a tendency to make any consequential fact more or less probable. Evid.R. 401. Consequently, this evidence was properly excluded. See Evid.R. 402. Amy Cloum's blood/alcohol content was properly excluded under Evid.R. 403(A), as any probative value it might have was substantially outweighed by the danger of unfair prejudice or confusion of the issues.
Accordingly, appellant's first assignment of error is not well-taken.
 II.
In his second assignment of error, appellant complains that the trial court's refusal to instruct the jury on lesser included offenses was erroneous.
Appellant insists that there is nothing in the record to suggest that the shootings were not provoked or accidental. Therefore, he contends the trial court should have also instructed the jury on the offenses of voluntary manslaughter, involuntary manslaughter and negligent homicide.
A trial court is required to include in its jury charge instructions on lesser included offenses if a trier of fact could reasonably find against the state and for the defendant on one or more elements of the crime charged, but the remaining proven elements would sustain a conviction upon a lesser included offense. State v. Huertas (1990), 51 Ohio St.3d 22,31-32 citing State v. Wilkins (1980), 64 Ohio St.2d 382, 388. Conversely, however, as the Wilkins case makes clear,
 "The mere fact that an offense can be a lesser included offense of another offense does not mean that a court must instruct on both offenses where the greater offense is charged. [Juries are] not to be presented with compromise offenses which could not possibly be sustained by the adduced facts." Id at 387, citing State v. Nolton (1969), 19 Ohio St.2d 133, 134.
In our view, the trial court correctly refused instructions on lesser included offenses. Seldom have we ever seen a defendant who communicated his intent to commit murder to so many people so often. Moreover, on the night of the shooting, by his own account and that of several other witnesses, he hunted these victims with a loaded revolver in his lap and when he found them he executed them while he was in a self-admitted state of rage — all before a half-dozen eye or earwitnesses. Appellant said he was going to kill Sherry Gurley and Amy Cloum and he did. Any other construction of the evidence would be unreasonable.
Accordingly, appellant's second assignment of error is not well-taken.
Upon consideration whereof, the judgment of the Huron County Court of Common Pleas is affirmed. Costs to appellant.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ________________________ Peter M. Handwork, JUDGE
James R. Sherck, J. and Mark L. Pietrykowski, P.J. CONCUR.
[1] Evidence would later suggest that the two went to "The Flats," a club area in Cleveland.