OPINION
Appellant William Perry appeals a judgment of the Licking County Common Pleas Court convicting him of felonious assault (R.C. 2903.11):
 ASSIGNMENT OF ERROR THE DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.
Appellant met Paul Lawrence when they were both in jail. After he was released from jail, appellant began living with Lawrence. Approximately one week after he moved in with Lawrence, Debbie Cobun, who had been romantically involved with Lawrence off and on for years, stopped by the apartment and ended up moving in. Lawrence had been violent to Cobun in the past, and she communicated this history to appellant during the time they resided in the apartment together. When they first were together, Lawrence had knocked Cobun to the floor, kicked her in the back, punched her in the back of head, and threw a beer bottle at her. On another occasion, he was watching her take a bath while drinking a beer, and suddenly began to strangle her. He attempted to shove her head under the water while strangling her. Because she is a gymnast, she managed to extricate herself from Lawrence at that time. (Tr. 119.)
On October 8, 2000, Cobun was working nights at Bob Evans. She arrived home at approximately 1:00 a.m., drank a few beers, cleaned the apartment, and went to sleep at approximately 6:00 a.m. At 1:00 o'clock in the afternoon, she was awakened when appellant opened the door and threw a bag of cat litter into the room. When she got out of bed, she observed that appellant and Lawrence had been drinking. She got out some hamburger for them to eat later, took her food stamp card to the grocery store, and purchased cheese, potato chips, and chip dip for a meal.
The trio then proceeded to another apartment to watch a football game. After eating, Lawrence left the apartment with another woman. When they returned, appellant began striking Lawrence, hitting him at least 12 times. Although Cobun told the police that Lawrence struck appellant first, at trial she testified that she did not remember Lawrence striking appellant. When appellant began punching Lawrence, Cobun laid down on the couch with her back to the fight. She did not like to watch Lawrence, as he stood with arms at his sides instead of fighting back. When she got up from the couch, Lawrence was on the ground, and appellant was kicking him in the head. According to Cobun, " Bill done kicked him like he was going to kick a field goal." Tr. 126. Eventually, appellant stopped kicking Lawrence, and asked the resident of the apartment to call a cab for him. When the cab arrived, appellant left the apartment.
According to Cobun, at approximately the time of the fight, Lawrence was using a walker at times due to an injury. Lawrence had locked himself out of his apartment, and attempted to get into a top window by using a ladder. He fell some distance, and was injured. He was incapacitated to the point where he had someone taking care of him in his apartment.
After appellant left the scene of the fight, emergency medical personnel arrived on the scene. Kyle Bookless, a paramedic with the City of Newark, immediately noticed that there was a large amount of blood on the carpeting, the walls, on various objects around the room, and the door. He knew Paul Lawrence prior to this date, as Lawrence had been a frequent caller of the 911 service over the past five years, but due to the swollen nature of his face, he did not recognize Lawrence. Due to the nature of the apparent head injuries, Lawrence was taken by medical helicopter flight to the Ohio State University Medical Center. Lawrence suffered a subdural hematoma, for which neurosurgery was required. He was in the hospital until October 16, 2000, and continued with therapy up to the time of trial. Lawrence had no memory of the incident, other than appellant kicking him in the head.
Appellant was indicted by the Licking County Grand Jury on one count of felonious assault, in violation of R.C.2903.11 (A)(1). The case proceeded to jury trial in the Licking County Common Pleas Court.
At trial, appellant testified that he and Lawrence began drinking at 5:30 that morning. Between 5:30 and 1:00 in the afternoon, they had made several beer runs. Because Lawrence was not allowed in the local 7-11 store, appellant purchased the beer. Accord to appellant, while they were watching the football game, Debbie Cobun was showing off how much weight she had lost. She pulled the waist band of her pants out to demonstrate how much weight she lost, and lifted up her shirt in front of appellant. Appellant testified that at this point Lawrence "sucker punched" him. Appellant testified that he gave Lawrence his cheeseburger, telling him he needed to stop drinking and start eating, and told him he would let that one go. He testified that when he went to get another cheeseburger, Lawrence hit him in the face again, catching his earring. At this point, he hit Lawrence back. He claimed that Lawrence fell after the first punch, but bounced up and said, "Mother Fucker, I'm going to kill you." Tr. 43. He testified that he had heard from Debbie Cobun about the bathtub incident, and feared that Lawrence was going to put his hands around his neck and snap it. He testified that he kept hitting Lawrence, who kept bouncing up and threatening him. Finally, appellant claimed that he was tired of the whole thing, and wasn't going to play anymore. At this point, Lawrence stayed down. According to appellant, he picked up his cigarette, his beer, and asked someone to call him a cab. He noticed that Lawrence was gurgling, and walked over to check to make sure he was still breathing. According to appellant, he thought Lawrence was going to sleep it off. While he was waiting for the cab, Cobun tried to clean Lawrence up with paper towels. She was smoking a cigarette, and let Lawrence have a few puffs.
Appellant testified that he had participated in organized boxing in the past, and hit Lawrence four times. He testified that he did not say anything to Lawrence in anger. Appellant admitted that he told an investigating officer that with the last punch, he said, "kiss the baby." He also admitted that when the investigating officer confronted him with the fact that it did not seem possible that he could do that much damage with four punches, appellant responded that he was "just that good." Tr. 65. He testified that where he comes from, if you put your hands on another man and get your butt kicked, you should get up and go about your business. Tr. 69. He also conceded that he may have forgotten to tell the police that Lawrence threatened to kill him.
Appellant was convicted of felonious assault as charged in the indictment. He was sentenced to seven years incarceration.
 I
Appellant argues that his trial counsel was ineffective for failing to request a lesser-included offense instruction on the crime of aggravated assault. The defense presented by counsel at trial was one of self-defense.
Counsel is not ineffective unless his performance fell below an objective standard of reasonable representation, and the defendant was prejudiced by such performance. Strickland v. Washington (1984),466 U.S. 668; State v. Bradley (1989), 42 Ohio St.3d 136, cert. denied,497 U.S. 1011. To demonstrate prejudice, the defendant must show that had counsel not erred, there is a reasonable probability that the outcome of the proceeding would have been different. Id. Prejudice sufficient to justify reversal exists only where the result of the trial was unreliable, or the procedure rendered fundamentally unfair by the performance of counsel. State v. Carter (1995), 72 Ohio St.3d 545, 558,cert. denied, 516 U.S. 1014. There is a strong presumption that trial counsel's failure to request an instruction on a lesser-included offense is a matter of trial strategy. State v. McKinzie (June 5, 2001), Franklin App. No. 00AP1182, citing State v. Griffie (1996),74 Ohio St.3d 332, 333.
Appellant was charged with felonious assault:
 (A) No person shall knowingly do either of the following:
 (1) Cause serious physical harm to another or to another's unborn;
Aggravated assault, an inferior degree offense of felonious assault, is defined:
 (A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
 (1) Cause serious physical harm to another or to another's unborn.
Where there is sufficient evidence on the issues of self-defense and aggravated assault, the court must charge the jury on both, when so requested. State v. Ervin (1991), 75 Ohio App.3d 275. In most cases, an aggravated assault instruction is incompatible with an instruction on self-defense, so that both cannot be given together. State v. Beaver
(1997), 119 Ohio App.3d 385, 397. However, an aggravated assault instruction could be given in a self-defense case, where circumstances are such that the defendant exceeded the amount of force necessary for his defense, out of passion or rage. Id.
In the instant case, appellant has not demonstrated that the court would have been required to give the instruction if requested, based on the state of the evidence. In addition, appellant has not demonstrated prejudice sufficient to undermine confidence in the outcome of the trial, as the evidence does not demonstrate the he would have been acquitted of felonious assault, and convicted of aggravated assault.
An aggravated assault instruction may be given only when the evidence shows there was objectively sufficient provocation. State v. Shane
(1992), 63 Ohio St.3d 630. If there is evidence of an objectively sufficient provocation, the inquiry shifts to a subjective component of whether this actor, in this particular case, actually was under the influence of sudden passion or in a sudden fit of rage. Id. at 634. The Supreme Court has defined "serious provocation" as provocation that is reasonably sufficient to bring on extreme stress, and reasonably sufficient to incite the defendant into using deadly force. State v.Deem (1988), 40 Ohio St.3d 208, paragraph 5 of the syllabus. A reviewing court must consider the emotional and mental state of the defendant, and the conditions and circumstances that surrounded him at the time. Id.
The evidence in this case does not support a claim that appellant was in a state of a sudden anger or rage. Appellant testified that he never spoke to Lawrence in anger. In fact, appellant's own description of the events reflects that he was calm throughout the encounter. Appellant stated that after hitting Lawrence four times," I was tired of the whole thing, I wasn't going to play." Tr. 46. After he noticed Lawrence was not getting back up, he picked up his cigarettes and beer, and went to the door, asking someone to call a cab. At one point, he walked over to make sure Lawrence was breathing, but after he assured himself that Lawrence was alright, he went back to the door to wait for the cab.
The assignment of error is overruled.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Licking County Common Pleas Court is affirmed.
GWIN, J., EDWARDS, P.J., WISE, J., concur