DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Wood County Court of Common Pleas. Following a jury trial, a guilty verdict was entered against appellant, Ricardo Anez, Jr., for the felonious assault of Robin Endicott ("Robin"), in violation of R.C. 2903.11(A)(1), a felony of the second degree, and for the assault of Lisa Syderenko ("Syderenko"), in violation of R.C. 2903.13, a misdemeanor of the first degree. Appellant was sentenced on May 24, 1999, to four years of incarceration at the Ohio Department of Rehabilitation and Corrections and six months at the Wood County Justice Center, to be served concurrently. Appellant was granted one hundred forty-nine days credit for time already served. For the reasons stated herein, this court affirms the judgment of the trial court.
On appeal, appellant raises the following as his sole assignment of error:
 "THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S REQUEST FOR JURY INSTRUCTIONS ON THE LESSER INCLUDED OFFENSES OF AGGRAVATED ASSAULT AND ASSAULT."
Specifically, appellant argues that the trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder. Appellant asserts that the trial court should have instructed the jury on the charge of aggravated assault insofar as it is an offense of an inferior degree to the charge of felonious assault. Appellant also argues that the trial court should have instructed the jury on the lesser included offense of assault with respect to the charge of felonious assault.
According to the Ohio Supreme Court, aggravated assault, pursuant to R.C. 2903.12,[1] was not a lesser included offense of felonious assault, but, rather was an offense of an "inferior degree * * * since its elements are identical to those of felonious assault, except for the additional mitigating element of serious provocation." State v. Deem (1988), 40 Ohio St.3d 205,210-211. When the defendant presents sufficient evidence of serious provocation, an instruction on aggravated assault must be included. Id. at 211.
Appellant asserts that he established serious provocation. Serious provocation is established in the following manner:
 "First, an objective standard must be applied to determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage. That is, the provocation must be `sufficient to arouse the passions of an ordinary person beyond the power of his or her control.' If this objective standard is met, the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case `actually was under the influence of sudden passion or in a sudden fit of rage.'" State v. Mack (1998), 82 Ohio St.3d 198, 201, citing State v. Shane (1992), 63 Ohio St.3d 630, 634-635.
"In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstance that surrounded him at the time."Deem, 40 Ohio St.3d at paragraph five of the syllabus.
In Deem, the Ohio Supreme Court held, as a matter of law, that a historically stormy relationship and the bumping of the offender's car by the victim's car were insufficient to incite the offender into using deadly force. Deem at 211. InState v. Shane (1992), 63 Ohio St.3d 630, paragraph two of the syllabus, the Ohio Supreme Court held that "[w]ords alone would not constitute reasonably sufficient provocation to incite the use of deadly force in most situations." Moreover, "[f]ear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." Mack at 201, citing, State v. Collins (1994), 97 Ohio App.3d 438, 445-446;State v. Cunningham (Oct. 17, 1991), Clark App. No. 2759, unreported; State v. Williams (Aug. 13, 1992), Cuyahoga App. No. 60819, unreported.
A charge on the lesser included offense of assault is required when "the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." State v. Thompson (1988),40 Ohio St.3d 213, paragraph two of the syllabus. R.C. 2903.11(A) (1) states that anyone who knowingly causes serious physical harm[2] to another is guilty of felonious assault. R.C.2903.13 states that anyone who knowingly causes or attempts to cause physical harm to another or recklessly causes serious physical harm to another is guilty of assault. Hence, in order to have the jury charged on the lesser included offense of assault, the evidence must have failed to establish beyond a reasonable doubt that appellant knowingly caused serious physical harm to Robin, but that appellant instead knowingly caused or attempted to cause physical harm to Robin, or recklessly caused him serious physical harm.
Upon a thorough review of the record, we note the following relevant testimony. The state presented a number of witnesses who gave somewhat different versions of the incident that occurred on August 30, 1998. Generally, the testimony indicated that there were a number of people at a bar in Fostoria, Ohio, who knew each other. At closing time, there was an argument between Joel Velasquez ("Velasquez") and Jeremy Dominique ("Dominique") concerning the alleged attempted theft of a case of beer. The argument continued in the parking lot, at which point Ryan Endicott ("Ryan"), Robin's brother, had joined his friend Dominique. Dominique and Ryan walked away from this argument. Thereafter, Robin was hit in the left side of his face by Velasquez. Robin immediately fell to the ground. According to some of the state's witnesses, specifically, Ryan, Amanda Oren, Ryan's girlfriend, Cole Doyle, and Dominique, appellant stomped on and/or kicked Robin in his head, face, and mid-section. Robin was also "jumped" on by someone other than appellant once he was on the ground. Dr. Robert Baugh treated Robin at the hospital and testified that Robin's injuries were a result of multiple blows, which could have included punching, kicking, or stomping, but did not result from Robin just falling on the pavement. Appellant had severe lacerations. There were also a number of other fights that erupted during the time of Robin's assault.
The defense also presented a number of witnesses. All the witnesses testified that appellant never had any contact with Robin. The testimony relevant to the question of serious provocation is as follows.
Appellant's mother, Mary Anez, testified that there was taunting occurring while she, appellant, and her husband, Ricardo Anez, Sr. ("Mr. Anez") were exiting the bar and in the parking lot. However, she could not state with certainty that the taunting caused the fights to erupt.
Mr. Anez, appellant's father, testified that appellant was not with him and his wife when they exited the bar and did not hear the taunts. Rather, Mr. Anez testified that he remained in the parking lot to ensure that his son made it to his car. While waiting, appellant exited the bar. Mr. Anez described a group of four or five people who were apparently taunting appellant, although Mr. Anez could hear nothing. Mr. Anez exited the vehicle and approached appellant. With respect to his and appellant's interaction with Robin, Mr. Anez testified that he and appellant were heading for their vehicles after some disagreement had been calmed down. They heard hollering behind them and turned around to see Robin yelling things and pointing his finger at them. At this moment, Velasquez stepped in between appellant and Mr. Anez and "back-handed" Robin in the face. According to Mr. Anez, Robin was immediately rendered unconscious as he fell back to the ground with limp arms, not attempting to catch himself. Mr. Anez further testified that neither his son, nor anyone else, touched Robin after the initial blow. However, Mr. Anez did testify that appellant struck Syderenko when she came at him, but he denied that appellant kicked her while she was on the ground, as she had testified.
Appellant testified in his own behalf that he and his friends were "outnumbered" when they exited the bar and that they "just had to defend [themselves]." Appellant testified that the action he took to defend himself was just to stay on his toes and keep away from the people in the parking lot. Appellant testified that there were a number of fights occurring at once and that his friends were being attacked; however, he admitted on cross-examination that he did not actually see Dion Tey or Tarquis Robinson ("Tarquis") being hit. Moreover, although appellant testified that he had to assist his friend Lionel ("Bo") Robinson while he was being attacked, this "defense" occurred after Robin had already been rendered unconscious. With respect to Robin, appellant testified that Robin was struck[3] and immediately rendered unconscious, but that appellant had no contact with Robin. On cross-examination, appellant testified that, once Robin was knocked out, he "was no longer a threat to [appellant] or anybody else" and, therefore, there was no reason to hit him thereafter. Appellant further agreed that he did not have to defend himself against a guy who was on the ground unconscious.
Tarquis also testified on appellant's behalf. Tarquis testified that he was not with appellant when he exited the bar, but he knew that there were words exchanged concerning the beer and that "a fight resulted somehow." Tarquis testified that there were a number of fights occurring at once, two in which he was involved. Tarquis further testified that he saw Velasquez hit Robin and try to jump on him, but testified that Velasquez was unsuccessful because someone pushed him and broke his fall. With respect to appellant, Tarquis testified that he did not see appellant kick Robin; however, Tarquis testified that he was struck by a man with glasses soon after Robin was knocked to the ground.
Dion Tey testified that Robin was jumping around hollering. Tey saw Robin on the ground later, but did not see him getting hit because someone had grabbed Tey and he was engaged in a fight defending himself.
In order to determine whether the trial court should have included an instruction on the inferior offense of aggravated assault, initially, we must determine whether the alleged provocation, seeing one's friends involved in a "physical altercation" during a "bar fight," was reasonably sufficient to bring on a sudden passion or fit of rage. See Mack, supra.
Even assuming that there were a number of fights occurring at once, there is no evidence that Robin took any action toward anyone other than yelling, hollering, jumping around, and pointing toward appellant and his father. Inflammatory words are not sufficient provocation to bring on a sudden fit of rage. See Shane, 63 Ohio St.3d 630. Additionally, appellant's fear alone is insufficient provocation. See Mack,supra at 201.
Moreover, not only did Robin never physically assault anyone, at the time appellant kicked Robin in the head and torso, Robin was lying on the ground bleeding and unconscious. Appellant even admitted that Robin posed no threat to anyone at that moment.
Furthermore, appellant never claimed that he was under the influence of sudden passion or a fit of rage; rather, he testified that he only acted in defense of others. We, however, note that this "defense" only occurred after Robin was already unconscious and had nothing to do with the assault of Robin by appellant, as was testified to by Ryan, Oren, Doyle, and Dominique.
Under the facts and circumstances in this case, we find that the alleged provocation was insufficient to arouse the passions of an ordinary person beyond the power of his control. See Mack, supra. As such, the trial court did not err in failing to instruct the jury with respect to the offense of aggravated assault.
We further find that the trial court did not err in failing to instruct the jury as to the lesser included offense of assault with respect to the charge of felonious assault. According to appellant, there was only "minimal" evidence that appellant intended to cause serious physical harm or that he actually caused serious physical harm. We disagree.
The medical evidence established that Robin suffered multiple blows to the head, resulting in severe lacerations. These lacerations were caused by direct blows to the face rather than from Robin hitting the pavement. Additionally, the testimony of the witnesses established that Velasquez struck Robin only once in the face and that someone tried to jump on Robin at some point. Whereas, with respect to appellant, the witnesses testified that appellant kicked Robin repeatedly in the head. By all accounts of the state's witnesses, both Robin and the surrounding pavement were covered in an excessive amount of blood. Accordingly, we find that under no reasonable view of the evidence, even in a light most favorable to the accused, could the jury have found that appellant did not knowingly cause serious physical harm to Robin. Accordingly, the trial court did not err in failing to instruct the jury on the lesser included offense of assault.
Based on the foregoing, we find that appellant's sole assignment of error is found not well-taken. On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Wood County Court of Common Pleas is therefore affirmed. Court costs of this appeal are assessed to appellant.
Peter M. Handwork, J., Melvin L. Resnick, J., Richard W. Knepper,P.J., CONCUR.
[1] R.C. 2903.12(A) states that "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly * * * [c]ause serious physical harm to another * * * [or] * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance * * *."
[2] Serious physical harm means any of the follow: "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment; (b) Any physical harm that carries a substantial risk of death; (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; (d) Any physical harm that involves some permanent disfigurement, or that involves some temporary, serious disfigurement; (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering, or that involves any degree of prolonged or intractable pain." R.C.2901.01(A)(5).
[3] Appellant did not want to name Velasquez as Robin's initial assailant; however, it was made clear in later testimony that Velasquez delivered the blow that knocked Robin to the ground.