JOURNAL ENTRY AND OPINION
{¶ 1} In State v. Allen, Cuyahoga County Court of Common Pleas Case No. CR-368564, applicant was found guilty by a jury of felonious assault (R.C. 2903.11) and sentenced to two years of community control. This court affirmed that judgment in State v. Allen (Nov. 30, 2000), Cuyahoga App. No. 76672. The Supreme Court of Ohio denied Allen's request for a delayed appeal. State v. Allen, 96 Ohio St.3d 1437,2002-Ohio-3344, 770 N.E.2d 1048
 {¶ 2} New counsel for Allen has filed with the clerk of this court an application for reopening. Allen asserts that she was denied the effective assistance of appellate counsel because appellate counsel did not challenge the propriety of various aspects of the jury instructions and did not assert that the verdict was against the manifest weight of the evidence. We deny the application for reopening. As required by App.R. 26(B)(6), the reasons for our denial follow.
 {¶ 3} Initially, we note that App.R. 26(B)(1) provides, in part: "An application for reopening shall be filed * * * within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." App.R. 26(B)(2)(b) requires that an application for reopening include "a showing of good cause for untimely filing if the application is filed more than ninety days after journalization of the appellate judgment."
 {¶ 4} This court's decision affirming Allen's conviction was journalized on December 12, 2000. The application was filed on June 27, 2002, clearly in excess of the ninety-day limit. Allen has supplemented her application with copies of: a canceled check dated January 2, 2001 and payable to a new attorney who was to represent her; a memorandum in support of jurisdiction stamped "Received" (but not "Filed") by the clerk of the Supreme Court of Ohio on January 26, 2001. In her affidavit in support of the application, Allen avers that her new attorney did not communicate with her. Although Allen indicates that she "tried to monitor" her case, she does not explain the delay until May 2002 to retain new counsel. "[T]his court has repeatedly held that misplaced reliance on one's attorney does not establish good cause." State v.Dozier (Jan. 17, 1980), Cuyahoga App. Nos. 40186 and 40187, reopening disallowed (Jan. 3, 2002), Motion No. 33149, at 5. Allen's failure to demonstrate good cause is a sufficient basis for denying the application for reopening.
 {¶ 5} We also deny the application on the merits. Having reviewed the arguments set forth in the application for reopening in light of the record, we hold that Allen has failed to meet her burden to demonstrate that "there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." App.R. 26(B)(5). InState v. Spivey, 84 Ohio St.3d 24, 1998-Ohio-704, 701 N.E.2d 696, the Supreme Court specified the proof required of an applicant.
 {¶ 6} "In State v. Reed (1996), 74 Ohio St.3d 534, 535,660 N.E.2d 456, 458, we held that the two prong analysis found inStrickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674, is the appropriate standard to assess a defense request for reopening under App.R. 26(B)(5). [Applicant] must prove that his counsel were deficient for failing to raise the issues he now presents, as well as showing that had he presented those claims on appeal, there was a `reasonable probability' that he would have been successful. Thus [applicant] bears the burden of establishing that there was a `genuine issue' as to whether he has a `colorable claim' of ineffective assistance of counsel on appeal." Id. at 25. Allen cannot satisfy either prong of the Strickland test. We must, therefore, deny the application on the merits.
 {¶ 7} In the application for reopening, Allen asserts seven assignments of error (numbered one through three and five through eight). Allen acknowledges that trial counsel did not object to the aspects of the jury instructions that she challenges in assignments of error one through three and five through seven. "Thus if an error had been committed, such error had been waived and could only be reviewed on a plain error analysis. Such an argument could succeed only if there was a clear miscarriage of justice. State v. Underwood (1983), 3 Ohio St.3d 12,444 N.E.2d 1332." State v. Taylor (Oct. 17, 1996), Cuyahoga App. No. 69843, reopening disallowed (Oct. 20, 1999), Motion No. 5439, at 16, appeal dismissed (2000), 88 Ohio St.3d 1413, 723 N.E.2d 119. At a minimum, Allen has not demonstrated plain error in the jury instructions.
 {¶ 8} Allen's conviction for felonious assault arose from an altercation with her brother, Paul Allen, during which she struck him with "a stick or other object" that she had taken from her car. State v.Allen (Nov. 30, 2000), Cuyahoga App. No. 76672, at 3-4. In her first two assignments of error, Allen challenges the propriety of the instructions on the definition of serious physical harm, physical harm and attempt as "incomprehensible; in part, because the trial court ran the definitions of all three terms together; in part, because the trial court included words not used in the definitions, and, in part, because of the omission of numbers or words used in the definitions." Application, at 7. Allen challenges the following portion of the jury charge:
 {¶ 9} "Serious physical harm to a person. Serious physical harm to person means any of the following: (1) Any mental illness or condition of such gravity as would such normally require hospitalization or prolonged contradict [sic] treatment of any physical harm which carries substantial risks of death, any physical harm which involves permanent incapacity, whether partial or total or which involved some temporary or substantial incapacity, any physical harm which involve[s] some permanent disfigurement or which involve temporary serious disfigurement, any physical harm which involves acute pain of such duration as to result in substantial suffering or which involves any degree of prolonged or intractable pain, physical harm means any jury [sic], illness or other psychological impairment, regardless of its gravity or duration, an attempt of such conduct normally performed, which conduct, if successful, would result in the crime charged, the act or acts must be such as to identify the crime to indicates it's beginning [sic], but is not actually the crime, has to be committed [sic]." Tr. 338-339.
 {¶ 10} At the time of the incident giving rise to Allen's conviction, R.C. 2903.11 defined felonious assault as:
 {¶ 11} "(A) No person shall knowingly:
 {¶ 12} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 13} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code."
 {¶ 14} R.C. 2901.01(A) contains the following definitions:
 {¶ 15} "(3) `Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration. * * *.
 {¶ 16} "(5) `Serious physical harm to persons' means any of the following:
 {¶ 17} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 18} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 19} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 20} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 21} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 22} In State v. Green (1991), 58 Ohio St.3d 239, 569 N.E.2d 1038, Green had been convicted of felonious assault. "* * * `[A]ttempt]' for purposes of R.C. 2903.11 is defined in R.C. 2923.02(A) as follows:
 {¶ 23} "`No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct which, if successful, would constitute or result in the offense.'" Green, supra, at 240.
 {¶ 24} On direct appeal, this court rejected Allen's assignment of error asserting that the trial court erred by denying her Crim.R. 29 motion for acquittal. "* * * Paul Allen testified that he had been out cutting the grass and defendant's daughter jumped on his back. Defendant then struck him in the mouth with an object which she had in her car. The wound required stitches and extensive dental work." State v. Allen (Nov. 30, 2000), Cuyahoga App. No. 76672, at 7.
 {¶ 25} It is clear that Allen's conduct caused injury to her brother. Likewise, the scope of his injury is not disputed. The instructions stated by the trial court are imprecise in their particulars. In light of the testimony, however, we cannot conclude that this imprecision constitutes "a clear miscarriage of justice." Allen's first two assignments of error do not, therefore, provide a basis for reopening.
 {¶ 26} In her third assignment of error, Allen complains that the trial court's definition of "causation" was confusing.
 {¶ 27} "Cause is an essential element of the offense. Cause is an act which in the natural and continuous sequence directly produces the serious physical harm and/or the physical harm and without which, it would not have occurred.
 {¶ 28} "Now defendant's responsibility is not related to the immediate or most obviously relate [sic] to the defendant's acts or failure to act, the defendant is also responsible for the natural and foreseeable consequences or results that follow in the ordinary course of events from the acts." Tr. 338.
 {¶ 29} The standard instruction on causation is set forth at 4 Ohio Jury Instructions (2000), 64-65, Section 409.55, which provides, in part:
 {¶ 30} "1. CAUSE. * * *. Cause is an essential element of the offense. Cause is an act or failure to act which in a natural and continuous sequence directly produces the (death) (physical harm to [person] [property]), and without which it would not have occurred.
 {¶ 31} "2. NATURAL CONSEQUENCES. The defendant's responsibility is not limited to the immediate or most obvious result of the defendant's act or failure to act. The defendant is also responsible for the natural and foreseeable (consequences) (results) that follow, in the ordinary course of events, from the act or failure to act."
 {¶ 32} In State v. Gross, 97 Ohio St.3d 121, 2002-Ohio-5524,776 N.E.2d 1061, at ¶ 97, et seq., the Supreme Court upheld this instruction in a murder case and reaffirmed the requirement that a reviewing court consider a challenged instruction in the context of the entire charge. Although the trial court's instruction on causation lacked precision in some of the particulars, we cannot conclude that it constitutes "a clear miscarriage of justice." Allen's third assignment of error does not, therefore, provide a basis for reopening.
 {¶ 33} In the assignments of error numbered "five" and "six," Allen asserts that appellate counsel was ineffective for failing to assign as error the trial court's instructions regarding self-defense: that "words alone" are insufficient to support a claim of self-defense; and including both the use of deadly force as well as the use of non-deadly force.
 {¶ 34} During her direct appeal, Allen discharged her initial, retained appellate counsel after he had filed a brief including two assignments of error. Allen's initial appellate counsel also represented her at trial. An application for reopening is not an appropriate procedure to assert the ineffective assistance of appellate counsel who also was trial counsel. In State v. Cruz (Sept. 25, 2001), Cuyahoga App. No. 78475, reopening disallowed, 2002-Ohio-3238, Motion No. 34162, this court observed:
 {¶ 35} "* * * [Applicant] concedes that his trial counsel and his appellate counsel were the same individual. Because an attorney cannot be expected to argue his own incompetence during a trial, an appellate counsel who was also trial counsel is not ineffective for failing to argue the deficiencies of trial counsel." Id., at ¶ 5 (citations omitted). The analysis that follows is, therefore, necessarily limited to whether Allen is entitled to reopening as a result of the representation of replacement counsel.
 {¶ 36} In a handwritten filing as part of her direct appeal, Allen indicated that she had retained replacement appellate counsel "because [her initial appellate counsel] has not cooperated with any recommendations offered by experts whom I hired relative to my appeal." Notice of Appearance, attachment, filed July 5, 2000. Replacement appellate counsel submitted a supplementary brief with one assignment of error: "The court erred in its instruction to the jury relative to the affirmative defense of self-defense by applying an instruction which is only applicable to the use of deadly force, while herein deadly force was not used." This court's opinion affirming Allen's conviction quotes the trial court's instruction on self-defense and held that the assignment of error lacked merit. State v. Allen (Nov. 30, 2000), Cuyahoga App. No. 76672, at 10-11.
 {¶ 37} Applicant's request for reopening is barred by res judicata — generally and regarding the jury instruction on self-defense.
 {¶ 38} "The principles of res judicata may be applied to bar the further litigation in a criminal case of issues which were raised previously or could have been raised previously in an appeal. See, generally, State v. Perry (1967), 10 Ohio St.2d 175, 22 N.E.2d 104, paragraph nine of the syllabus. Claims of ineffective assistance of appellate counsel in an application for reopening may be barred by resjudicata unless circumstances render the application of the doctrine unjust. State v. Murnahan (1992), 63 Ohio St.3d 60, 66, 584 N.E.2d 1204."State v. Williams (Mar. 4, 1991), Cuyahoga App. No. 57988, reopening disallowed (Aug. 15, 1994), Motion No. 52164.
 {¶ 39} Allen filed a delayed appeal in the Supreme Court of Ohio. As noted above, the Supreme Court denied Allen's request for a delayed appeal. In State v. Scott (Apr. 17, 1995), Cuyahoga App. No. 66846, reopening disallowed (Mar. 5, 1998), Motion No. 80072, appeal dismissed,82 Ohio St.3d 1431, 694 N.E.2d 981, the Supreme Court had denied Scott's motion for leave to file a delayed appeal from this court's judgment affirming his conviction. "Because the issues of ineffective assistance of appellate counsel or the substantive issues listed in the application for reopening either were raised or could have been raised previously,res judicata now bars relitigation of these matters." Id. at 8-9.
 {¶ 40} On direct appeal, this court considered all of the assignments of error filed by both of Allen's appellate counsel — including the additional assignment of error filed by Allen's selection as replacement appellate counsel. If Allen had submitted the same supplementary brief and assignment of error pro se, res judicata would prevent her from being able to maintain her claim for reopening. See, e.g., State v. Patrick (Sept. 13, 2001), Cuyahoga App. No. 78605, reopening disallowed (Mar. 21, 2002), Motion No. 35687, at 3. The circumstances presented in this case require the same conclusion.
 {¶ 41} Res judicata necessarily bars Allen's claim for reopening in its entirety and specifically with respect to her claim that the instruction regarding self-defense was error. Allen's replacement appellate counsel assigned error related to the trial court's instruction on self-defense. A review of the supplementary brief filed on direct appeal reflects that replacement counsel argued the same issue asserted in the application as assignment of error six: whether the trial court's instruction regarding the use of deadly force was appropriate in this case in light of the fact that Allen used non-deadly force. We cannot now second-guess the judgment of replacement appellate counsel. As a consequence, the application of res judicata is not unjust.
 {¶ 42} In the assignment of error numbered "five," Allen complains that appellate counsel was ineffective for failing to assert that the following instruction was error:
 {¶ 43} "Now words result [sic] to the use of deadly weapons. Deadly weapon[s] are not permitted because of words, vial [sic] or abusive language or verbal threats no matter provocative [sic] and do not justify an assault or the use of a deadly weapon." Tr. 342.
 {¶ 44} Allen contends that the instruction given by the trial court does not conform to the standard instruction on self-defense: "Resort to the use of a deadly weapon is not permitted because of words. Vile or abusive language, or verbal threats, no matter how provocative, do not justify the use of a deadly weapon." See State v. DiPaolo (July 1, 1994), Belmont App. No. 92-B-55, at 4, appeal dismissed (1994),70 Ohio St.3d 1466, 640 N.E.2d 528, quoting 4 Ohio Jury Instructions (1993) 78, Section 411.33(1). But, see, 4 Ohio Jury Instructions (2000) 78, Section 411.35(1) [the "words alone" instruction]. Once again, we must conclude that the trial court's failure to deliver an individual instruction precisely does not constitute a "clear miscarriage of justice." As discussed above, this court determined on direct appeal that the trial court sufficiently articulated the standards for self-defense. Allen's assignment of error numbered "five" does not, therefore, provide a basis for reopening.
 {¶ 45} In her assignment of error numbered "seven," Allen complains that her appellate counsel did not assign as error that the trial court did not instruct the jury on the lesser included offense of aggravated assault and that trial counsel's failure to request such an instruction constituted the ineffective assistance of trial counsel. R.C. 2903.12(A) defines aggravated assault and provides, in part:
 {¶ 46} "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
 {¶ 47} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 48} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code."
 {¶ 49} In support of this assignment of error, Allen cites Statev. Mack, 82 Ohio St.3d 198, 1998-Ohio-375, 694 N.E.2d 1328, in which the Supreme Court reversed the court of appeals and held that "the trial court properly denied the defendant's request for an instruction on the offense of aggravated assault as an inferior degree of the offense of felonious assault." Mack, supra, at 202. "In State v. Deem (1988),40 Ohio St.3d 205, 533 N.E.2d 294, we held that `aggravated assault' was an offense of an inferior degree of felonious assault because its elements were identical to felonious assault except for the additional mitigating element of provocation. Thus, we stated, `in a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation, an instruction on aggravated assault must be given to the jury.' Id., paragraph four of the syllabus. Furthermore, `provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time.' Deem, at paragraph five of the syllabus. In that case, we found that a historically stormy relationship and the bumping of the offender's car by the victim's car were insufficient, as a matter of law, to incite the offender into using deadly force. Deem,40 Ohio St.3d at 211, 533 N.E.2d at 300. Since there was insufficient evidence of provocation, we held that `even though aggravated assault is an offense of an inferior degree to the indicted crime [of felonious assault], an instruction thereon was not supported by the evidence presented in this case, and was properly refused.'" Id.
 {¶ 50} "In State v. Shane (1992), 63 Ohio St.3d 630, 590 N.E.2d 272, we elaborated on what constitutes `reasonably sufficient' provocation in the context of voluntary manslaughter. First, an objective standard must be applied to determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage. That is, the provocation must be `sufficient to arouse the passions of an ordinary person beyond the power of his or her control.' If this objective standard is met, the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case `actually was under the influence of sudden passion or in a sudden fit of rage.' Shane,63 Ohio St.3d at 634-635, 590 N.E.2d at 276. We also held in Shane that words alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations. Id., paragraph two of the syllabus."Mack, supra, at 200-201.
 {¶ 51} On direct appeal this court summarized the relevant portion of Allen's testimony.
 {¶ 52} "Defendant testified that Paul immediately began to argue with her after she arrived at her mother's apartment. He accused her of slamming the door in his face and came toward her. She grabbed a magnifying glass off of the table. Defendant's mother and Paul's wife came to see what was happening and defendant then grabbed a pair of scissors from the table for protection. She called the police.
 {¶ 53} "Defendant waited for the police for approximately forty minutes. She called her daughter who arrived at the apartment a short time later. Defendant's mother asked them to leave so that the police would not go to the apartment and defendant and her daughter proceeded to leave. Paul stopped cutting the grass when he saw them and he threatened defendant. Defendant stated that her daughter jumped in between them and defendant then ran to her car and grabbed a stick or other object from her car. She next saw Paul push her daughter away and continue to come at her. Defendant stated that Paul pulled his hand back as if to hit her and she struck him with the object. The three then fell to the ground." Statev. Allen (Nov. 30, 2000), Cuyahoga App. No. 76672, at 3-4.
 {¶ 54} Allen has not demonstrated that trial counsel was ineffective for failing to request an instruction on aggravated assault as a lesser included offense. Even her own version of the facts may not have been sufficient to establish either provocation "to arouse the passions of an ordinary person beyond the power of his or her control" or that she herself was "actually was under the influence of sudden passion or in a sudden fit of rage." Furthermore, trial counsel emphasized Allen's efforts at self-defense in an effort to secure an acquittal. In light of the deference appellate courts must show to trial counsel's strategy, we cannot conclude that appellate counsel was deficient or that Allen was prejudiced by the absence of an assignment of error asserting that the trial court should have instructed the jury on the lesser included offense of aggravated assault.
 {¶ 55} Allen's assignment of error numbered "seven" does not, therefore, provide a basis for reopening.
 {¶ 56} In her assignment of error numbered "eight," Allen contends that appellate counsel was ineffective for failing to include an assignment of error asserting that the verdict was against the manifest weight of the evidence.
 {¶ 57} "A manifest weight of the evidence argument involves determining whether there exists a greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. Weight is not a matter of mathematics, but depends on its effect in inducing belief. Id.
 {¶ 58} "When reviewing a claim that the judgment in a criminal case is against the manifest weight of the evidence, this court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, supra, citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717."In re: Idom, Cuyahoga App. No. 79639, 2002-Ohio-3632, ¶ 16-17.
 {¶ 59} In her application, Allen indicates that the page limitation for applications for reopening prevents her from fully developing an argument in support of her assignment of error that the verdict is against the manifest weight of the evidence. Merely asserting that the judgment was against the "manifest weight" of the evidence is not sufficient to establish a genuine issue as to whether Allen was deprived of the effective assistance of counsel on appeal. App.R. 26(B)(5). Allen does not demonstrate either that appellate counsel was deficient or that Allen was prejudiced by the performance of appellate counsel. We cannot, therefore, conclude that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 60} Allen's assignment of error numbered "eight" does not, therefore, provide a basis for reopening.
As a consequence, Allen has not met the standard for reopening. Accordingly, the application for reopening is denied.
ANNE L. KILBANE, J., AND ANN DYKE, J., CONCUR.