DECISION AND JUDGMENT ENTRY
{¶ 1} Michael Gibson appeals his conviction on three counts of felonious assault from the Sandusky County Court of Common Pleas. Because we conclude that the conviction was supported by the manifest weight of the evidence and that the trial court did not err in failing to instruct the jury about aggravated assault or in permitting multiple convictions and sentences, we affirm.
 Facts {¶ 2} Michael Gibson was convicted of three counts of felonious assault after a two day jury trial. In the early morning of February 2, 2002, he hit three people with his brother's car behind Agitator Alley, a bar in Clyde, Ohio. This event occurred after a bar fight Gibson and his brother, David Gibson, had with Corey Carroll and Mike Gish. Testimony differs over the details of the fight, how it began, and whether Carroll was asked to leave or left after a friend asked for help. A number of spectators left the bar to watch the fight, including Carroll's girlfriend, Dustin Davidson. Bouncers went outside to try to break it up. Gibson punched Carroll in the face; Carroll kicked Gibson in the face.
 {¶ 3} Carlos Mendoza, the bar owner, planned to call the police to arrest Carroll and his friend, Christopher Norman, but Carroll's girlfriend convinced Mendoza to allow her to take the men home. A crowd of curious patrons had to be led back into the bar. The three then left together, walking abreast, back to Carroll's car.
 {¶ 4} While this was going on — over the span of about twenty minutes — the Gibson brothers left and went to David Gibson's car. Both were bloody from the fight. David sat in the driver's seat ready to drive home, but Gibson ordered his brother to climb over the console into the passenger seat so he could drive.
 {¶ 5} Just after the last patron entered the bar, Gibson started his brother's car. He flashed the headlights and revved the engine. Gibson then started to accelerate straight down the alley toward the three walkers. His brother screamed for him to stop, but Gibson would not listen.
 {¶ 6} Heather Lopez was in the alley behind the bar, returning to meet up with friends. Attracted by the flash of lights, Lopez turned and saw Davidson and Carroll flying through the air as Gibson's car sped by. She estimated the speed at 20-25 miles-per-hour. Davidson and Carroll flipped over the car roof and struck so forcefully that the front windshield spiderwebbed in two separate places. Lopez saw the car turn the corner and speed away. She ran into the bar for help.
 {¶ 7} Norman and Raphael Jesus Hernandez, a member of bar security, gave medical assistance to Davidson. Hernandez testified he was concerned because Davidson was bleeding heavily from the gash in her head, was unconscious, and not breathing. She started breathing as he was about to administer CPR. Carroll tried to help but could not, as the impact had broken his leg. Norman was shaken-up, with cuts and scrapes, but did not need the medical attention as did the other two.
 {¶ 8} The Gibson brothers returned to the bar later that night for their friends who had driven with them but did not know about the fight. David found them, and Gibson then took a circuitous route back home to Tiffin. He did not allow his brother to talk about what happened until they returned to their parents' house.
 Appellant's Assignments of Error {¶ 9} "The court erred by not instructing the jury on the offenses of inferior degree, namely aggravated assault, where defendant presented evidence of serious provocation."
 {¶ 10} "The court erred by allowing multiple convictions and sentences on allied offenses emanating from one incident in violation of ORC 2941.25(A), and his rights to due process."
 {¶ 11} "The verdict was against the manifest weight of the evidence in that a necessary element of the offense was not proved beyond a reasonable doubt, namely knowingly cause or attempt to cause physical harm to another."
 Appellant's First Assignment of Error {¶ 12} Although Gibson was indicted with three counts of felonious assault, a violation of R.C. 2903.11,[1]he argues that because he was provoked, the jury should have been instructed on aggravated assault, under R.C. 2903.12.[2] This is incorrect.
 {¶ 13} In a case of felonious assault, when the defendant presents sufficient evidence of serious provocation, an instruction on aggravated assault must be given to the jury. State v. Deem (1988), 40 Ohio St.3d 205, at paragraph four of the syllabus. Later, in State v. Shane (1992),63 Ohio St.3d 630, 634, the Supreme Court of Ohio explained what evidence of provocation was needed to give an instruction to the jury:
 {¶ 14} "An inquiry into the mitigating circumstances of provocation must be broken down into both objective and subjective components. In determining whether the provocation is reasonablysufficient to bring on sudden passion or a sudden fit of rage, anobjective standard must be applied. Then, if that standard is met, the inquiry shifts to the subjective component of whether this actor, in thisparticular case, actually was under the influence of sudden passion or ina sudden fit of rage. It is only at that point that the '* * * emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time * * *' must be considered. Deem, supra, paragraph five of the syllabus. If insufficient evidence of provocation is presented, so that no reasonable jury would decide that an actor was reasonably provoked by the victim, the trial judge must, as a matter of law, refuse to give a voluntary manslaughter [or aggravated assault] instruction. In that event, the objective portion of the consideration is not met, and no subsequent inquiry into the subjective portion, when the defendant's own situation would be at issue, should be conducted." (Emphasis added)
 {¶ 15} This analysis has been expressly adopted by the Ohio Supreme Court in felonious assault cases. State v. Mack (1998),82 Ohio St.3d 198, 200-201. In other words, was the situation, objectively speaking, one that would bring on sudden passion or rage? If so, was the defendant actually in that emotional state?
 {¶ 16} Here, to determine whether there was sufficient evidence for an instruction on aggravated assault, we must first decide the reasonableness of provocation. Gibson and Carroll fought that night. Gibson punched Carroll in the face and took a kick in the face. Bar security restrained Carroll, and Gibson left the alley with his brother. At least 10-20 minutes passed before Gibson drove his brother's car directly at Corey Carroll, Dustin Davidson, and Christopher Norman. After striking them, Gibson left the scene, but he later returned to the bar to allow his brother to find their passengers. Gibson did not drive directly back to Tiffin and told his brother not to talk.
 {¶ 17} When provocation is an issue, immediacy is also an issue. That Gibson had ultimately lost the fight is immaterial. He had enough time to cool down. The record reveals Gibson was not acting under provocation when he drove his brother's car into three people, causing at least two serious injury. This case does not have sufficient evidence of provocation. It is similar to other cases where convictions in felonious assault cases were upheld although an aggravated assault instruction was not given.[3] The trial court did not err when it failed to instruct the jury about the crime of aggravated assault. Appellant's first assignment of error is found not well-taken.
Appellant's Second Assignment of Error
 {¶ 18} Gibson next argues that he cannot be convicted of three counts of felonious assault because he hit all the victims at the same time. This argument fails.[4]
 {¶ 19} The statute that governs whether an individual may be convicted and sentenced on multiple counts is R.C. 2941.25.[5] It has been referred to when the issue has been multiple victims, felonious assault convictions, or both. When there is a situation where the defendant's conduct puts more than one person at risk, the crimes are of dissimilar import. State v. Franklin, 97 Ohio St.3d 1, 2002-Ohio-5304, at ¶ 48; State v. Jones (1985), 18 Ohio St.3d 116, 117-118. Here, Gibson put three separate people at serious risk by driving down the alley. Therefore, he is subject to three separate convictions and sentences under R.C. 2941.25.
 {¶ 20} A majority of appellate cases applying the statute concern a defendant's firing a weapon into a crowd, hurting more than one individual. In those cases, courts have stated that the defendant may be convicted and sentenced for multiple crimes because he knew that his conduct would, in all likelihood, cause multiple people to be injured. "A defendant is responsible for the natural and probable consequences of his acts, and one is presumed to intend the necessary and natural consequences of those acts." State v. Phillips (1991), 75 Ohio App.3d 785,790; State v. Stallings (July 13, 1994), Summit App. No. 16437; State v.Phadphom (Sep. 10, 1996), Crawford App. No. 3-96-11.
 {¶ 21} Even if Gibson meant to hurt only a single person, the analysis remains the same. Gibson knew, or should have known, that by driving his brother's car down the alley at a high rate of speed toward three pedestrians, there was a reasonable likelihood that all three would suffer serious physical harm. Gibson, therefore, should be held accountable for the "necessary and natural consequences" of his actions. Id. Multiple convictions are proper in this case. Appellant's second assignment of error is found not well-taken.
Appellant's Third Assignment of Error
 {¶ 22} Appellant's last assignment of error, that the jury's finding that he acted knowingly was against the manifest weight of the evidence, is not borne out by the record.
 {¶ 23} Legal concepts of sufficiency of the evidence and weight of the evidence are quantitatively and qualitatively different. State v.Thompkins (1997), 78 Ohio St.3d 380, 386. Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other. Id. at 387.
 {¶ 24} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id. (citing Tibbs v. Florida (1982), 457 U.S. 31, 42). The appellate court,
 {¶ 25} reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id. at 387 (quoting State v. Martin (1983), 20 Ohio App.3d 172, 175).
 {¶ 26} Moreover, even when weighing the evidence and determining the credibility of witnesses, a reviewing court should remember that these are issues primarily for the trier of fact. The factfinder can hear, observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness's reaction to exhibits and the like. Determining credibility from a sterile transcript is far more difficult. A reviewing court must, therefore, accord due deference to the credibility determinations made by the factfinder. State v. DeHass (1967),10 Ohio St.2d 230, at paragraph one of the syllabus.
 {¶ 27} Gibson challenges his felonious assault convictions solely on the basis of whether the jury could find that he acted knowingly. Under R.C. 2901.22(B), "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." After reviewing the record, we find that Gibson acted knowingly when he drove his car into the three victims.
 {¶ 28} In a case resembling Gibson's — where a man entered his truck and drove into people who were in a parking lot where he and wife were physically assaulted at a wedding reception — the Second District Court of Appeals stated that "[k]nowledge is a state of mind that must be proved from the surrounding facts and circumstances. Here, the jury could reasonably infer from the evidence concerning [the defendant's] statements and demeanor that he was aware that his conduct would probably result in physical harm to persons." State v. Dotson
(Nov. 21, 1997), Clark App. No. 97-CA-0071. See also, State v. Brinkley
(Oct. 30, 2000), Stark App. No. 1999CA00412; State v. Fails (Mar. 28, 1991), Cuyahoga App. No. 58400; (cases where defendant used his car as a deadly weapon to chase down and injure people with whom he was angry).
 {¶ 29} The jury logically found that Gibson had acted knowingly. Especially damning testimony came from Gibson's brother, David, who told the jury that Gibson made him climb over the console into the passenger's seat so he could drive. The brother also stated how he had yelled for Gibson to stop but that Gibson still ran down the three pedestrians and left the scene, as if nothing had happened. The brother then described how they pulled in front of the bar so they could get the two other people they had traveled with and go home. He described how Gibson took an indirect route back to their parents' house. David Gibson recounted how he said to his brother that he was concerned that Gibson had hurt people, and Gibson responded, "Just be quiet. We'll talk about it when we get home." He described the extensive damage that Gibson had done to the car because of the force of the impact.
 {¶ 30} David Gibson's testimony alone could have shown that Gibson acted knowingly; however, the brother's testimony only reinforced other witnesses. By waiting until all the other people had gone back into the bar before he drove down the alley at Carroll, Davidson, and Norman and by not leaving the alley on a much closer street, Gibson showed his knowing mental state. He also did not hit Heather Lopez who witnessed what happened in the alley. In summary, Gibson's convictions were not against the manifest weight of the evidence on the element of "knowingly." Appellant's third assignment of error is found not well-taken.
 {¶ 31} On consideration whereof, we find that substantial justice was done to appellant, Michael Gibson. The judgment of the Sandusky County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
 JUDGMENT AFFIRMED.
Handwork, P.J., and Singer, J., concur.
[1] R.C. 2903.11(A) provides:
"(A) No person shall knowingly do either of the following:
"(1) Cause serious physical harm to another or to another's unborn;
"(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
[2] R.C. 2903.12(A) provides:
"(A) No person, while under the influence of sudden passion or a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
"(1) Cause serious physical harm to another or to another's unborn;
"(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code."
[3] State v. Anez (Aug. 25, 2000), Wood App. No. WD-99-043 (victim assaulted after taunting defendant); State v. Farris (Jan. 30, 1998), Erie App. No. E-95-052 (victim stabbed after returning to his car after a fight); State v. Koonce (Mar. 7, 1997), Erie App. No. E-96-002 (victim shot because he had hit one of defendant's friend); State v. Lipkins
(June 21, 1996), Lucas App. No. L-95-133 (corrections officer punched after prisoner claimed he was threatened). See also State v. Huth (July 31, 1996), Summit App. No. 17351 (victim hit in head with cinder block after winning bar fight).
[4] At the outset, it bears noting that during jury deliberation a question was posed by the jurors: "Why are there three separate charges and not one?" The trial court answered the question, in writing, as follows: "Because there are three persons." The record reflects that this response was made "[w]ith agreement of counsel." Therefore, a convincing argument could be made that any error, if present at all, was waived. But the briefs never addressed this issue, so we will proceed on the merits.
[5] R.C. 2941.25 provides:
"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."