[Cite as *State v. Gultice*, 2013-Ohio-2570.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No.   2012-CA-55 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 12-CR-56 |
| v. | : | |
| | : | |
| JOHN R. GULTICE, JR. | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

· · · · · · · · · · ·

O P I N I O N

Rendered on the 21st day of June, 2013.

· · · · · · · · · ·

STEPHEN K. HALLER, Atty. Reg. #0009172, by STEPHANIE R. HAYDEN, Atty. Reg. #0082881, Greene County Prosecutor's Office, 61 Greene Street, Xenia, Ohio 45385
     Attorney for Plaintiff-Appellee

JAY A. ADAMS, Atty. Reg. #0072135, 36 North Detroit Street, Suite 102, Xenia, Ohio 45385
     Attorney for Defendant-Appellant

· · · · · · · · · · · ·

FAIN, P.J.

{¶ 1}    Defendant-appellant John R. Gultice, Jr., appeals from his conviction and

sentence for Felonious Assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree;

Abduction, in violation of R.C. 2905.02(A)(2), a felony of the third degree; and Criminal Damaging, in violation of R.C. 2909.11(A)(1), a misdemeanor of the second degree.

{¶ 2}    Gultice contends that the trial court erred by denying his request to instruct the jury concerning Aggravated Assault, an offense of inferior degree to Felonious Assault.   He also contends that his trial counsel was ineffective for having failed to elicit testimony at a suppression hearing that Gultice was living at the premises where the search occurred, so as to give him standing to challenge the constitutionality of the search.   Finally, he contends that his trial counsel was ineffective for having failed to object to certain questions put to the State's witnesses.

{¶ 3}    We conclude that the evidence in the record would not permit a reasonable jury to have found that Kilcoyne did anything constituting serious provocation reasonably sufficient to incite Gultice into using deadly force.   Therefore, the trial court did not err in declining to give the requested instruction on Aggravated Assault.

{¶ 4}    Because the trial court did reconsider the suppression issue after trial testimony provided a basis for finding that Gultice did, in fact, live at the premises where the search occurred (and where the assault allegedly took place), we conclude that even if Gultice's trial counsel's failure to have elicited testimony along these lines at the suppression hearing were deemed to have fallen below an objective standard of representation, that failure was not sufficiently prejudicial to merit reversal.

{¶ 5}    Finally, we conclude that trial counsel was not ineffective for having failed to object to various questions put to the State's witnesses.

{¶ 6}    Accordingly, the judgment of the trial court is Affirmed.

**I.   After Driving his Girlfriend Home from an Evening of Celebration,**

**Gultice Runs Amok, Injuring his Girlfriend, and Damaging her Apartment**

{¶ 7}   Gultice was in a relationship with Hilary Kilcoyne, who lived in a two-floor townhouse apartment in Beavercreek, Ohio.   She had been in Biloxi, Mississippi for about a month, training for her job.   She returned on February 4, 2012, having driven home from Mississippi.

{¶ 8}   To celebrate Kilcoyne's return, Gultice drove her to the Round Table, evidently a place where alcoholic beverages and food were served.   They arrived at about 8:00 in the evening.   Later, friends arrived.   Gultice and Kilcoyne stayed at the Round Table until about 11:00, when they left to go to All Sports, a similar establishment, across the street from the Greene County Courthouse, in Xenia.   They stayed there "a couple of hours."

{¶ 9}   The testimony of the State's witnesses and Gultice's witnesses diverged substantially on the issue of how much alcohol Gultice and Kilcoyne, respectively, consumed during the course of the evening.   According to the State's witnesses, Gultice consumed many beers, while Kilcoyne had relatively few; according to Gultice's witnesses, Kilcoyne consumed many beers, and at least some "shots," while Gultice had only two or three beers at the Round Table, and no more than that many, or possibly fewer, at All Sports.

{¶ 10}   There was also a divergence in the testimony concerning the attitude of Kilcoyne and Gultice toward each other during this time.   And there were some other differences in the testimony concerning what occurred while Kilcoyne and Gultice were at the Round Table and All Sports, but none of these differences have much materiality to the issues in this appeal.   There

was no physical violence between Kilcoyne and Gultice until after Gultice drove Kilcoyne home.

{¶ 11} According to Kilcoyne, when they got back to her apartment, she just wanted to go to bed to sleep, while Gultice wanted to talk. When she tried to shut the door to her bedroom, Gultice was "screaming, yelling, enraged and pushing against the door." Gultice "kicked the door all the way through the doorframe. It went into the laundry room and broke the frame and damaged the door."

{¶ 12} Kilcoyne told Gultice to stop damaging her things, but that just enraged him more, and he began to punch holes in doors and walls. She testified that: "There were four doors damaged, and there was about three or four holes punched in the guest room walls."

{¶ 13} Kilcoyne retreated into the bathroom, closed and locked the door, and sat down against the door. According to her, he was shouting obscenities at her, and she was afraid he would kill or hurt her.

{¶ 14} Gultice then began kicking the bathroom door, eventually "kicking the whole bottom very forcibly out of the door," while she was sitting with her back against it. Gultice's kicking in the bottom of the bathroom door while she was sitting on the floor against it "hurt" her.

{¶ 15} Kilcoyne got up from the bathroom door. Gultice grabbed her, and "slammed" her into the bathtub, a hard, ceramic type bathtub, knocking the wind out of her. Gultice then grabbed her again, "pushed" her "out of the tub," and "hit" or "threw" her into the toilet. When she was "shoved" into the toilet, the toilet seat was broken off.

{¶ 16} Kilcoyne managed to crawl back into the bedroom. Gultice "smashed" her head into a nightstand, causing her head to bleed.

{¶ 17}  Kilcoyne was now trying to find her cell phone.  When she found it, Gultice grabbed it from her and "smashed it into the bathroom floor," causing it to break into at least two pieces.

{¶ 18}  Gultice then found Kilcoyne's keys, and threw them against the wall, "saying that he was going to break my remote start."

{¶ 19}  At this point, Kilcoyne could hear pounding on the door to her apartment.  This was one of two police officers who had responded to a neighbor's 911 call, knocking on the door.  After about ten to fifteen minutes, Kilcoyne managed to get downstairs to answer the door.  She spoke with Beavercreek Police Officer Brian Cline.

{¶ 20}  Kilcoyne later talked to a paramedic, was taken to a hospital, and was treated by Carrie Keneaster, an emergency room physician.  Kilcoyne sustained a fracture of her 11th rib, transverse process fractures of her lumbar vertebras number one, two, three, and four, and a scalp hematoma with a puncture wound.

{¶ 21}  Kilcoyne testified that the injuries Gultice inflicted upon her caused her "excruciating" pain, that she "couldn't sleep or sit up or walk comfortably, and there were days, if [she] had leaned back too far in order to get up, [she] had to just scream in pain and roll to try to even move."  On the day Kilcoyne testified, four and a half months after the assault, she testified that: "I still have numbness in my lower back and I still get like twinges or stabs of pain here and there.  Obviously, I can't do as much.  I like to workout [sic].  I haven't been able to get fully back into that."  Kilcoyne also testified that she was unable to drive for "at least a month" after the assault, and missed two months of work.

{¶ 22}  Gultice did not testify, but a statement he gave to Officer Cline was read to the jury and received in evidence.  In that statement, Gultice wrote:

I, John Gultice, went home with Hilary Kolander [another name Kilcoyne used] and upon arriving at her house she went upstairs and I got her a glass of water and then followed her upstairs. And she already had water and then I said I missed her and wanted to stay, and she said I was an ass all night and smacked me and scratched my neck.

So I pushed her, and at that time we were upstairs in the bathroom, and when I pushed her, she fell into the tub, and I picked her up and out and we discussed with each other how we both were wrong and we wanted it all over and I would leave in the morning or my friends could get me that night.

We listened to the Police Officers knock for almost 20 minutes, and then she went to the door and let the Officers in.

{¶ 23} At this point, Gultice was asked how the doors and walls got damaged, and his answer was " 'I punched through the doors instead of hitting her,' or something like that. Hitting – 'instead of hitting her I hit the wall.' " Cline testified further that:

Briefly, he stated that he did push Hilary, and when he pushed her in the bathtub, that's when the curtain rod broke and some other things in the bathroom broke. He wouldn't really go in great detail about how everything was broken other than the walls and the door.

{¶ 24} The next-door neighbors, a married couple, both testified. Their testimony concerning what they heard, both through the walls and from outside, tended to corroborate Kilcoyne's testimony of what occurred, and what was shouted, inside Kilcoyne's apartment during the assaults upon her.

{¶ 25} The police took a number of photographs that early morning showing the

condition of the apartment, which were admitted in evidence at the trial.

## II.   The Course of Proceedings

{¶ 26}   Gultice was arrested and ultimately charged by indictment with Felonious Assault, Abduction, and Criminal Damaging.   He moved to suppress evidence, contending that it was obtained as the result of an unlawful search and seizure.[1]   Following a hearing, the trial court overruled the motion to suppress, finding that Gultice, who had told the officers that he did not live at the apartment and did not get mail there, had no reasonable expectation of privacy in the premises.

{¶ 27}   Gultice was tried to a jury.   At the conclusion of the State's case, Gultice asked the trial court to reconsider his suppression motion, in view of evidence elicited at trial that Gultice was, in fact, living at the apartment with Kilcoyne at the time of the search.   The trial court did reconsider the suppression motion, concluding that the evidence – photographs of the interior of Kilcoyne's apartment, showing the damage Gultice had caused – would inevitably have been obtained lawfully, with Kilcoyne's consent, after Gultice's arrest.   (Although Kilcoyne would presumably have consented that morning, when the police had responded to the 911 call, it appears that the police officers neglected to obtain her consent.)   The trial court also found that the police officers who entered the apartment and took the photographs acted reasonably in concluding that Gultice had no reasonable expectation of privacy in the premises, Gultice having told the officers that he did not live there.

---

[1] The evidence at issue appears to be the photographs the police took of the interior of the apartment.

{¶ 28}   Gultice requested that the jury be instructed on the affirmative defense of self-defense, and on Aggravated Assault, an offense of inferior degree to Felonious Assault.   The trial court gave an instruction on self-defense, but declined to give an instruction on Aggravated Assault.

{¶ 29}   The jury found Gultice guilty on all three counts, a judgment of conviction was entered, and Gultice was sentenced accordingly.   From his conviction and sentence, Gultice appeals.

## III.   No Reasonable Jury Could Have Found, from the Evidence in the Record, that Kilcoyne Did Anything Constituting Serious Provocation Reasonably Sufficient to Incite Gultice into Using Deadly Force

{¶ 30}   Gultice's First Assignment of Error is as follows:

THE TRIAL COURT ERRED IN NOT INSTRUCTING THE JURY ON THE INFERIOR OFFENSE OF AGGRAVATED ASSAULT.

{¶ 31}   The first count of the indictment charged that Gultice "did knowingly cause serious physical harm to another," in violation of R.C. 2903.11(A)(1).   Gultice requested a jury instruction on Aggravated Assault, an offense of inferior degree.   That offense is, for the purposes of this appeal, proscribed by R.C. 2903.12(A)(1):

No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:

(1) Cause serious physical harm to another or to another's unborn;

(2) * * * .

{¶ 32} Thus, the mitigating element distinguishing Aggravated Assault from Felonious Assault is that the offender, in causing serious physical harm to the victim, was under the influence of sudden passion, or was in a sudden fit of rage, brought on by serious provocation occasioned by the victim "that is reasonably sufficient to incite [the offender] into using deadly force." We have previously opined that:

> In analyzing whether an aggravated assault instruction is appropriate, the trial court must first determine whether based on an objective standard the alleged provocation was reasonably sufficient to bring on a sudden fit of rage. *State v. Shane* (1992), 63 Ohio St.3d 630, 634, 590 N.E.2d 272. An aggravated assault instruction is only appropriate when the victim has caused serious provocation. *Id*. Serious provocation is provocation that is "sufficient to arouse the passion of an ordinary person beyond the power of his or her control." *Id*. at 635, 590 N.E.2d 272. Additionally, serious provocation has been described as provocation that is "reasonably sufficient to bring on extreme stress and * * * to incite or to arouse the defendant into using deadly force." *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294. *State v. Reese*, 2d Dist. Montgomery No. 22907, 2009-Ohio-5046, ¶ 30.

{¶ 33} Gultice and Kilcoyne were the only persons present when Gultice assaulted Kilcoyne, causing her serious physical harm. Kilcoyne testified at trial. Her testimony would certainly support a finding that Gultice was in a sudden fit of rage when he assaulted her. Nothing in her testimony, however, would permit a reasonable finder of fact to find that Kilcoyne had done anything that could be deemed to have been a serious provocation reasonably sufficient

to incite Gultice into using deadly force. For one thing, according to Kilcoyne's testimony, Gultice's sudden fit of rage *preceded* the only action on Kilcoyne's part that could be deemed to have constituted any sort of provocation at all – the scraping or scratching of Gultice's neck, which occurred after Kilcoyne had been thrown, or "smashed" into the bathtub, and was on her back, "trying to get up and trying to pull myself out." Thus, even if Kilcoyne's act of scratching Gultice's neck could be seen as reasonably sufficient provocation to have incited Gultice into using deadly force – which it was not – Gultice's sudden fit of rage could not have been "brought on" by that provocation, since it preceded the provocation.

{¶ 34} Gultice did not testify, but his statement to Officer Cline was received in evidence. The only part of Gultice's statement relevant to the issue of provocation is his statement that "she said I was an ass all night and smacked me and scratched my neck." We agree with the trial court that the actions of Kilcoyne described in this statement fall well short of constituting provocation "reasonably sufficient to incite [Gultice] into using deadly force." At most, the actions Gultice described in his statement might have constituted provocation reasonably sufficient to have incited him into using some force against Kilcoyne, but not deadly force.

{¶ 35} As the State notes, a trial court has at least some discretion in determining whether a requested jury instruction is warranted. *State v. Davis*, 2d Dist. Montgomery No. 21904, 2007-Ohio-6680, ¶ 14. Thus, the trial court is entitled to at least some deference in appellate review of that decision. In this case, we find no abuse of discretion in the trial court's decision not to give the Aggravated Assault instruction. Even if we were to give the trial court no deference at all on this issue, we would find no error. The evidence in the record does not

warrant a reasonable finder of fact in finding that any provocation by Kilcoyne was reasonably sufficient to have incited Gultice into using deadly force.

{¶ 36}  Gultice's First Assignment of Error is overruled.

## IV.  Even If Trial Counsel Fell Below an Objective Standard of Representation at the Suppression Hearing, Gultice Was Not Prejudiced Thereby, Since the Suppression Issue Was Reconsidered by the Trial Court at Trial

{¶ 37}  Gultice's Second Assignment of Error is as follows:

APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTIONS.

{¶ 38}  In support of this assignment of error, Gultice first argues that his trial counsel was ineffective at the suppression hearing, because he failed to call witnesses at the suppression hearing who would have given testimony establishing that Gultice resided in the premises, so that he had a reasonable expectation of privacy in the premises.  In overruling Gultice's motion to suppress, the trial court based its ruling upon its finding that Gultice had no reasonable expectation of privacy in the premises.  This finding was based upon the suppression hearing testimony of Officer Matthew Barber, who testified that Gultice told them that he did not live there, and did not get mail there.

{¶ 39}  Assuming, for purposes of analysis, that trial counsel's representation at the suppression hearing fell below an objective standard of reasonable representation for this reason, Gultice was not prejudiced thereby.  At the trial, more than one witness, including Kilcoyne,

herself, testified that Gultice was living at the apartment with her when the assault occurred and the police officers subsequently entered the apartment and took pictures.

**{¶ 40}** At trial, after the State rested, Gultice's counsel requested that the trial court "revisit" its ruling on the suppression motion, in view of the testimony at trial indicating that he did live in the apartment, and did have a reasonable expectation of privacy therein. And the trial court did, in fact, reconsider the suppression issue.

**{¶ 41}** The trial court acknowledged that Kilcoyne's trial testimony established that Gultice was, in fact, residing in the apartment, and that this did, in fact, "provide the Defendant with the protection of the Fourth Amendment." Nevertheless, the trial court concluded that the evidence should not be suppressed. In reaching that conclusion, the trial court noted that the police officers acted reasonably in concluding that Gultice was not living at the apartment, and therefore had no reasonable expectation of privacy therein, based upon Gultice's statement to Officer Barber that he did not live there, and did not receive mail there. Because the officers acted reasonably, the trial court found that there was no occasion to invoke the exclusionary rule and exclude the evidence.

**{¶ 42}** Additionally, the trial court opined:

> I think *Michigan v. Hudson* [*Hudson v. Michigan*, 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006)] is a case that addresses unconstitutional entry into a house, but the Supreme Court of the United States ruled that had they done it properly later on that afternoon then they could have gotten the evidence and pretty much held that the exclusionary rule didn't apply under those circumstances.

**{¶ 43}** The trial court then said: "So the Court will reaffirm its decision in denying the Motion to Suppress."

**{¶ 44}** Gultice argues that as a result of his trial counsel's ineffectiveness at the suppression hearing, the trial court erroneously concluded that he had no reasonable expectation of privacy in the premises, and overruled his suppression motion on that basis, alone. But because the trial court subsequently accepted that Gultice had a reasonable expectation of privacy in the premises, and ultimately based its decision not to suppress the evidence upon other grounds,[2] Gultice was not prejudiced by his trial counsel's alleged ineffectiveness at the suppression hearing.

**{¶ 45}** In his brief, Gultice also seems to be arguing that the ineffectiveness of his trial counsel at the suppression hearing adversely affected that part of his motion in which he sought to suppress statements he made to the officers after they had entered the apartment, and before he was arrested and taken to the police station. Gultice cannot possibly have been prejudiced by any ineffectiveness of his trial counsel in this regard, because the trial court granted that part of his motion, and suppressed those statements.

### V. Trial Counsel Was Not Otherwise Ineffective

---

[2] Gultice does not challenge the correctness of the grounds that the trial court ultimately relied upon in affirming its decision not to suppress the evidence.

{¶ 46} In support of his Second Assignment of Error, Gultice also argues that his trial counsel was ineffective for having failed to object to the following colloquy[3] during Kilcoyne's direct examination:

Q. All right. Did your head hit the toilet?

A. My body.

Q. Your body hit the toilet?

A. (Nodding affirmatively.)

Q. Okay. Do you know, is that when you fractured your rib?

A. I'm pretty sure when I hit the bathtub, that's when it started.

{¶ 47} Gultice argues that "during the prosecutor's questioning regarding injuries allegedly sustained by Kilcoyne, questions were asked not only in a leading and argumentative fashion but without proper foundation and which called for a speculative answer." The easiest of these arguments to deal with is the leading-and-argumentative-question argument. We see nothing argumentative here. A leading question is one that suggests the answer desired or expected. If the question "is that when you fractured your rib" can be considered to have been leading, it failed of its purpose. If any answer could have been expected, it would have been the answer that yes, Kilcoyne fractured her rib when her body hit the toilet. But she did not give that answer; she said she was pretty sure it was when she hit the bathtub.

{¶ 48} It is true that the question assumed a fact – that Kilcoyne had sustained a fracture of her rib – that had not yet been established, although Kilcoyne later testified concerning the extent of her injuries. We conclude that this is harmless in view of the subsequent medical

---

[3] Gultice cites p. 75 of the transcript, but nothing corresponding to his argument can be found on that page. The quoted colloquy, which he seems to be referring to, is at p. 76 of the transcript.

testimony of Dr. Keneaster that Kilcoyne sustained a fracture to the left side of her 11th rib, a fact that Gultice never disputed.

{¶ 49}  It is at least arguable that Kilcoyne's answer was speculative as to when she fractured her rib.  We conclude that this was unlikely to have affected the outcome of the trial. It is clear that her rib was fractured at some point during Gultice's multiple assaults upon her. Exactly when, during those assaults, each injury occurred was not material to the outcome of the trial.  Experienced defense counsel would understand that a jury might perceive an objection to Kilcoyne's having speculated concerning when, during the assaults, her rib was fractured, as being churlish, engendering sympathy for Kilcoyne.  Even worse, an objection to this question and answer, besides emphasizing the testimony in the minds of the jury, might have resulted in Kilcoyne's having provided a basis for her conclusion, describing the pain she felt in her rib cage when she was pushed into the bathtub.

{¶ 50}  Finally, Gultice argues that "trial counsel allowed the prosecution to lead basically every witness throughout the trial without more than a sprinkling of objections."  We have reviewed the entire transcript of the trial, and we do not find the plethora of leading questions Gultice describes.  We do find appropriate objections by defense counsel where warranted.

{¶ 51}  We conclude that Gultice was not deprived of the effective assistance of trial counsel.  Gultice's Second Assignment of Error is overruled.

## VI.  Conclusion

{¶ 52} Both of Gultice's assignments of error having been overruled, the judgment of the trial court is Affirmed.

· · · · · · · · · · · · ·

FROELICH and WELBAUM, JJ., concur.

Copies mailed to:

Stephen K. Haller
Stephanie R. Hayden
Jay A. Adams
Hon. Stephen Wolaver