[Cite as *State v. Martinez*, 2023-Ohio-4846.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 22AP-781 |
| | | (C.P.C. No. 21CR-2150) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Santiago Martinez, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 29, 2023

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Taylor M. Mick*, for appellee.

**On brief:** *Brian J. Rigg*, Attorney at Law, and *Brian J. Rigg*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Santiago Martinez, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of felony murder. For the following reasons, we affirm.

I. Facts and Procedural History

{¶ 2} By indictment filed May 27, 2021, plaintiff-appellee, State of Ohio, charged Martinez with one count of murder in violation of R.C. 2903.02(A), an unclassified felony ("purposeful murder"); and one count of murder in violation of R.C. 2903.02(B), an unclassified felony, with an underlying offense of felonious assault, in violation of R.C. 2903.11 ("felony murder"). The charges related to the death of Alexandra Berrios, Martinez's wife. Martinez entered a plea of not guilty, and the matter proceeded to trial in October and November 2022. Prior to the start of trial, and at the state's request, the

purposeful murder count was dismissed. Therefore, the trial proceeded on the felony murder charge. As pertinent to this appeal, the following evidence was adduced at trial.

{¶ 3} At approximately 5:45 p.m., on March 22, 2021, Nathan Williams and Shawna Merschbach arrived together at the Darby Creek Metro Park in Franklin County, Ohio. As they walked on a trail, they heard a commotion in the distance. Merschbach testified at trial she "heard what sounded like fighting." (Tr. Vol. II at 168.) Williams testified he heard "four or five loud scream bursts," and saw approximately 50 yards away "what appears to be a man smashing a log in a downward motion to the ground with, like, both hands." (Tr. Vol. II at 149.) The downward motions from the man continued even after the screams stopped. Merschbach also heard "very loud whacks" and saw what appeared to be a man moving his arms up and down. (Tr. Vol. II at 169.) As Williams and Merschbach went to get help, they saw the man emerge onto the trail. They followed the man who went down to the river to rinse his hands. Then the man ran to the parking lot where Merschbach was able to photograph the man's vehicle and license plate as he drove away. Later that evening, Williams identified Martinez, who had been arrested by the police, as the man he saw at the park repeatedly slamming something in a downward motion.

{¶ 4} Franklin County Deputy Sheriff Kent Romine was dispatched to the scene. When he arrived, Williams and Merschbach reported what they had seen and heard. Williams and Deputy Romine jogged to the location of the incident. As they approached the area, Williams stopped, and Deputy Romine continued on the trail and found Berrios unconscious on the ground. Deputy Romine testified that "[s]he had puncture wounds to her head from some sort of blunt object." (Tr. Vol. II at 189.) Once other deputies and emergency medical personnel arrived, they secured Berrios to a backboard and transported her back to the parking lot on an all-terrain vehicle. Soon thereafter, and based on the information gathered at the park, Franklin County Sheriff's Office Sergeant Tom Lung stopped and arrested Martinez. Sergeant Lung testified that Martinez appeared "a little shocked," but was fully compliant with orders. (Tr. Vol. II at 212.)

{¶ 5} Berrios sustained her injuries on March 22, 2021, but did not die until May 2, 2021. Two days after her passing, John Daniels, M.D., of the Franklin County Coroner's Office, performed an autopsy. Dr. Daniels identified the cause of Berrios' death as "[b]lunt force injuries of the head" sustained on March 22, 2021. (Tr. Vol. II at 270.)

{¶ 6} Martinez testified on his own behalf. He met Berrios in 1995 at a party in El Salvador, their native country. They married in 2009 and had three children together prior to the marriage. With the help of Berrios' brother, Martinez arrived in the United States in 2013 seeking to earn enough money to pay home repair expenses in El Salvador. By 2016, Berrios and their three children had arrived in the United States. After Berrios arrived in the United States, they separated and reconciled multiple times. But by March 2021, they had permanently separated and initiated divorce proceedings. On March 22, 2021, Berrios contacted Martinez and asked for his help in delivering paperwork relating to the divorce. Sometime that afternoon, Martinez picked up Berrios at her apartment and she asked to go to the Darby Creek Metro Park. Once they arrived at the park, they began walking on a trail as they talked. The conversation was pleasant until Berrios told Martinez that she never loved him and that he was a "dog" and "worthless." (Tr. Vol. III at 344.) She informed Martinez that, in deciding to come to the United States, she originally planned to live with another man, but changed her mind at the last minute. Then she told Martinez she had slept with another man in their marital bed. Martinez testified he "just lost it, and that was fatal." (Tr. Vol. III at 344.) He elaborated on what happened when he learned of her infidelity: "I just know that I reacted. I was blinded with pain. I was angry. Everything that she said provoked me. Anger. I was just mad." (Tr. Vol. III at 361.) He then picked up a heavy object and repeatedly struck Berrios.

{¶ 7} The jury found Martinez guilty of felony murder and the trial court sentenced him to 15 years to life in prison for the conviction. He timely appeals.

## II. Assignment of Error

{¶ 8} Martinez assigns the following sole assignment of error for our review:

> The jury's verdict was against the manifest weight of the evidence when the jury failed to find Mr. Martinez guilty of the lesser included offense of murder, involuntary manslaughter.

## III. Discussion

{¶ 9} Martinez's sole assignment of error alleges his murder conviction was against the manifest weight of the evidence. This assignment of error is not well-taken.

{¶ 10} Martinez was convicted of committing murder in violation of R.C. 2903.02(B), also known as felony murder. In order to convict a defendant of felony murder, the state must prove the defendant caused the death of another "as a proximate

result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code." R.C. 2903.02(B). Felonious assault is an example of an offense of violence. Under R.C. 2903.11(A)(1), "[n]o person shall knowingly * * * [c]ause serious physical harm to another." Martinez does not challenge the sufficiency of the evidence to convict him of felony murder, as he concedes evidence at trial demonstrated he caused the death of Berrios while committing felonious assault. He argues, however, the jury lost its way in finding him guilty of felony murder because the weight of the evidence convincingly established he acted under a mitigating circumstance, provocation. He therefore contends he should have been convicted of a lesser offense. We are unpersuaded.

{¶ 11} Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The jury, or the court in a bench trial, may take note of inconsistencies at trial and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982); *see State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, ¶ 20 ("a prerequisite for any reversal on manifest-weight grounds is conflicting evidence"). Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). Therefore, an appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387.

{¶ 12} Martinez's manifest weight argument centers on the evidence relating to his alleged provocation into using deadly force against his wife. This evidence was limited to Martinez's own testimony. He testified that he and Berrios had been married for over a decade and had some problems over the years, leading to multiple separations and reconciliations. On March 22, 2021, as they were in the process of getting a divorce, they decided to go to a park and take a walk together. Their conversation on the trail was initially pleasant and cordial, but it turned hostile when Berrios told him she never loved him and that she had slept with another man in their marital bed. According to Martinez's testimony, these statements enraged him, causing him to lose control and repeatedly strike Berrios with a heavy object.

{¶ 13} Based on Martinez's testimony concerning provocation, the trial court instructed the jury that in considering the indicted offense of murder, the jury also could consider a lesser offense, which the trial court identified as "involuntary manslaughter." On appeal, both parties acknowledge the parties and the court mistakenly referred to "involuntary manslaughter," instead of "voluntary manslaughter," when they discussed the jury instruction based on the provocation evidence. Thus, voluntary manslaughter is the lesser offense pertinent to this matter. Under Ohio's voluntary manslaughter statute, R.C. 2903.03(A), "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another."

{¶ 14} The trial court instructed the jury on the following elements necessary for Martinez to establish provocation as a mitigating circumstance that would reduce a murder offense to a voluntary manslaughter offense. "The test for voluntary manslaughter includes both an objective and a subjective component." *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 153. For the objective component, "a fact-finder must determine whether a serious provocation occurred and whether that provocation was 'sufficient to arouse the passions of an ordinary person beyond the power of his or her control.' " *Id.*, quoting *State v. Shane*, 63 Ohio St.3d 630, 635 (1992). *See id.* at 637 ("[W]ords alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations."). For the subjective component, "the fact-finder must evaluate whether 'this actor, in this particular case, actually was under the influence of sudden passion or in a

sudden fit of rage.' " *Thompson* at ¶ 153, quoting *Shane* at 634. A defendant must prove these mitigating circumstances by a preponderance of the evidence. *Id.*, citing *State v. Rhodes*, 63 Ohio St.3d 613, 620 (1992).

{¶ 15} Considering this framework, at issue was whether Martinez's testimony demonstrated he acted under the influence of sudden passion or in a sudden fit of rage, upon Berrios informing him of her infidelity, and that this provocation was reasonably sufficient to incite him into using deadly force. It was within the province of the jury, as the finder of fact, to conclude Martinez had not proven the necessary subjective and objective components of provocation as mitigation. Because the victim died, Martinez was the only remaining person privy to the details of the conversation that allegedly provoked him. Although other witnesses testified to hearing an argument between Martinez and Berrios, and then screaming, they could not hear the substance of the conversation. In reviewing Martinez's testimony, the jury reasonably could have disbelieved Martinez's self-serving testimony regarding the alleged provocation. Alternatively, even if the jury believed his testimony concerning Berrios' admission of infidelity, and that this caused him to act under the influence of sudden passion or in a sudden fit of rage, the jury reasonably could have concluded that the provocation was not sufficient to incite an ordinary person into using deadly force. Either way, the jury was not unreasonable in rejecting Martinez's mitigation claim.

{¶ 16} For the foregoing reasons, we do not find the jury clearly lost its way in finding Martinez guilty of murder. Because Martinez's conviction was not against the manifest weight of the evidence, we overrule his sole assignment of error.

## IV. Disposition

{¶ 17} Having overruled Martinez's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and LELAND, JJ., concur.